United States Court of Appeals,

Eleventh Circuit.

No. 96-6815.

Jackson LEWIS, Plaintiff-Appellant,

v.

John CALLAHAN, Acting Commissioner of Social Security, Defendant-Appellee.

Oct. 29, 1997.

Appeal from the United States District Court for the Southern District of Alabama. (No. 94-00878-BH-S), W.B. Hand, Judge.

Before BIRCH, Circuit Judge, FAY, Senior Circuit Judge, and COHILL[*], Senior District Judge.

FAY, Senior Circuit Judge:

In this appeal we review the district court's affirmance of the Commissioner's decision to award disability benefits to Claimant Jackson Lewis for the period of June 17, 1990, to November 12, 1992. Lewis argues that he continues to be unable to do any work due to a myriad of heart problems. The Commissioner found, however, that Lewis's health had improved and that by November 12, 1992, he could perform sedentary and non-stressful work. The only issue on appeal is whether substantial evidence supported this decision. Because we find that the Commissioner, acting through an administrative law judge (ALJ), failed to afford proper deference to the opinions of Lewis's treating physicians in coming to this decision, we reverse.

I.

Lewis was hospitalized on June 14, 1990 after a heart attack and was diagnosed with unstable angina, atherosclerotic heart disease, and ventricular trachycardia. Dr. Scott Pollak at Florida Hospital in Orlando, Florida recommended immediate bypass surgery. On July 3, 1990, doctors at DCH Regional Medical Center in Tuscaloosa, Alabama, performed successful quintuple coronary bypass graft surgery. Lewis was discharged on July 15, 1990. Lewis applied to the Social Security Administration for a period of disability, disability insurance benefits, and supplemental

---

[*]Honorable Maurice Cohill, Jr., Senior U.S. District Judge for the Western District of Pennsylvania, sitting by designation.

security income on June 27, 1990. Lewis alleged that as of June 17, 1990, he was disabled within the meaning of the Social Security Act due to his heart problems, including coronary artery disease and a left ventricular aneurysm. His claim was denied, initially and at reconsideration, and again after a hearing in front of ALJ Rafe Cloe. The Appeals Council granted review of the ALJ's decision, however, and remanded the case for a supplemental hearing and further development of the record.

Lewis received his supplemental hearing in front of a different ALJ, Melford Cleveland, on April 22, 1993. The evidence before ALJ Cleveland consisted of hospital records, live testimony from Lewis and vocational expert Dr. Robert Griffin, and the medical reports and notes of Lewis's treating physicians, Dr. Jeffrey Anderson and Dr. Perry Timberlake, and of the Commission's consulting physicians, Dr. Maurice Fitz-Gerald, Dr. George Singleton and Dr. Santhi Das.

In the hearing before ALJ Cleveland, Lewis testified that he was 43 years of age with a tenth grade education. He stated that he last worked as a longshoreman, but had not worked since June 17, 1990. He testified that he became tired easily, requiring frequent naps, and became winded after walking short distances. He testified that he became tired from standing in place. He stated that he could lift twenty-five pounds without discomfort but that his doctors advised him not to lift more than ten pounds.

Lewis's doctors, Dr. Timberlake and Dr. Anderson, submitted their medical records and notes into evidence to substantiate his claim of disability. Dr. Timberlake, a general practitioner, reported on November 5, 1990, that Lewis was "severely disabled with a *large ventricular aneurysm* in his heart and severe coronary artery [disease]. He was very lucky to live through his coronary bypass surgery. He certainly is not able to do any gainful work" (emphasis in original). Dr. Timberlake completed a Physical Capacities Evaluation on August 30, 1991 in which he estimated Lewis's ability to engage in certain activities during an eight hour workday. Dr. Timberlake reported that Lewis could sit for two hours at any one time or four hours during the entire eight-hour workday, stand for one hour at a time or two hours during the entire day, and walk for one hour at a time or one hour during the entire day. He again completed a Physical Capacities Evaluation on November

2

1, 1992, and reported that Lewis could sit for five hours at one time or five during the entire day, stand for two hours at a time or two hours during the entire day, and walk for one-half hour at one time or one-half hour during the entire day.

Dr. Anderson, a cardiologist, treated Lewis at the time of his bypass surgery and continued to see him regularly thereafter. According to Dr. Anderson, Lewis "has known severe ischemic heart disease and he has had previous coronary artery bypass graft surgery and he has a known left ventricular aneurysm and prior demonstration of high grade ventricular dysrhythmia." Dr. Anderson also completed a Physical Capacities Evaluation, most recently on November 3, 1992. He reported that Lewis can sit for four hours at one time and during the entire day, stand for two hours at a time or during the whole day, and walk for one hour at one time or during the entire day. While Dr. Anderson noted that Lewis had been "doing better" since his surgery, "[i]n view of his documented cardiac problems I certainly would feel that he should qualify for disability and be declared completely disabled."

Several other doctors also examined Lewis on behalf of the Commissioner and submitted their reports into evidence. Dr. Fitz-Gerald, a family practitioner, performed a consultive examination of Lewis on May 28, 1991. He found a history of coronary artery disease and long-standing hypertensive cardiovascular disease, and a "history of ventricular aneurysm, repaired." He completed a Physical Capacities Evaluation and estimated that Lewis could sit, stand and walk for eight hours at a time or for eight hours during an eight hour workday.

Dr. Das, a psychiatrist, examined Lewis's mental state and found no disorder.

Dr. Singleton, who describes his practice as "direct patient care," performed a consultive examination on November 12, 1992. Dr. Singleton noted Lewis's history of heart disease and high blood pressure. He observed through x-ray that Lewis's heart was "quite enlarged" and reported a "dialated [sic] left ventricle which probably represents a ventricular aneurysm." Dr. Singleton also completed a Physical Capacities Evaluation and reported that Lewis could sit for four hours at one time or six hours during the entire day, stand for two hours at a time or four hours during the entire

3

day, and walk for two hours at a time or four during the entire day.  In concluding his report, Dr. Singleton stated, "This man has been told repeatedly that he would never be able to work again but I believe if he could be trained to do some type of work in an office or where ever [sic] which did not require excessive physical activity he should be able to work as long as he is asymptomatic."

Finally, Dr. Griffin, a vocational expert, testified in front of ALJ Cleveland.  He stated that if Lewis's testimony were credible, especially as to his need for frequent rest during the day, then he would be unable to engage in any work in the national economy.  He also testified that the restrictions in the Physical Capacities Evaluations completed by Dr. Anderson and Dr. Timberlake would make him ineligible for even sedentary work because of his inability to sit, stand or walk for an entire eight hour work day.  However, Dr. Griffin testified that if the ALJ found Lewis healthy enough to do entry-level sedentary work, there were many jobs available to him.

After reviewing the evidence, ALJ Cleveland issued his decision on December 14, 1993, awarding Lewis a closed period of disability, beginning on June 17, 1990 and ending on November 12, 1992.  The following findings made by the ALJ are relevant to this controversy:

3. The claimant has the severe impairments of status post severe triple vessel coronary artery disease with quintuple coronary bypass grafting and longstanding hypertension controlled by medication;  history of ventricular aneurism [sic], repaired;  and possible stomach or duodenal ulcer.  He does not have an impairment, or combination of impairment, which meets or equals the criteria of an impairment listed in Appendix 1, Subpart P, 20 CFR, Part 404.

* * *

5. The claimant, given his age, education, past work experience and residual functional capacity, was unable to perform his past relevant work or any other work which exists in the national economy from June 17, 1990, through November 12, 1992.

6. The medical evidence establishes that, as of November 12, 1992, there has been an improvement in the claimant's medical impairments, and that this improvement is related to his ability to work.

7. For the period beginning November 12, 1992, the claimant's testimony is credible only to the extent that it is consistent with a residual functional capacity for entry level sedentary work which requires no stress.

8. According to the testimony of the vocational expert, the claimant is still unable to perform his past relevant work. However, the vocational expert further testifies that, considering his age, education, past work experience and residual functional capacity, the claimant is able to

4

perform a significant range of sedentary entry level work which exists in significant numbers in the national economy.

The Appeals Council declined Lewis's request for review making the ALJ's decision the final decision of the Commissioner.[1]

Final decision in hand, Lewis filed a complaint in U.S. District Court for the Southern District of Alabama seeking judicial review of the Commissioner's decision. The U.S. magistrate judge recommended that the Commissioner's decision be upheld, and his Report and Recommendation was adopted by the district court on July 24, 1996. Lewis now appeals the district court's affirmance of the Commissioner's decision, and we have jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## II.

We review the Commissioner's decision to determine if it is supported by substantial evidence and based upon proper legal standards. *See Walker v. Bowen,* 826 F.2d 996, 999 (11th Cir.1987). We will not disturb the Commissioner's decision if, in light of the record as a whole, it appears to be supported by substantial evidence. *See* 42 U.S.C. § 405(g); *MacGregor v. Bowen,* 786 F.2d 1050, 1053 (11th Cir.1986). Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion. *See Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971); *MacGregor,* 786 F.2d at 1053.

The instant controversy revolves around the evaluation of Lewis's "residual functional capacity," in light of the admitted improvement in his condition since June 17, 1990. The residual functional capacity is an assessment, based upon all of the relevant evidence, of a claimant's remaining ability to do work despite his impairments. 20 CFR § 404.1545(a). Along with his age, education and work experience, the claimant's residual functional capacity is considered in determining whether the claimant can work. 20 CFR § 404.1520(f). Here, the ALJ found that Lewis

---

[1] *See Chester v. Bowen,* 792 F.2d 129, 131 (11th Cir.1986) (ALJ's decision became "final" for purposes of judicial review when Appeals Council declined invitation to review).

could do stress-free sedentary work of a kind that exists in sufficient number in the economy. Lewis argues that, in fact, he cannot perform even sedentary work and that the ALJ's assessment of his residual functional capacity was not supported by substantial evidence.

Initially, we note that we are concerned here with the doctors' evaluations of Lewis's condition and the medical consequences thereof, not their opinions of the legal consequences of his condition. Our focus is on the objective medical findings made by each doctor and their analysis based on those medical findings.

There is no serious debate as to Lewis's underlying infirmities—the parties contest only how the infirmities affect his ability to work. Each side submitted medical records which reveal the opinions of Lewis' treating physicians and of the Commissioner's consulting physicians. While the consulting physicians believe that Lewis is only marginally limited in his ability to perform the functions of sedentary employment, Lewis's own doctors believe that his condition is much more limiting. As Dr. Griffin, the vocational expert, testified, if the treating doctors are right, Lewis is unemployable. If not, then he can do sedentary work and is no longer disabled.

We do not evaluate the opinions of the physicians without guidance. The law of this circuit is clear that the testimony of a treating physician must be given substantial or considerable weight unless "good cause" is shown to the contrary. *MacGregor,* 786 F.2d at 1053; *Broughton v. Heckler,* 776 F.2d 960, 961-62 (11th Cir.1985). A similar preference for the opinions of treating doctors is found in the Commissioner's regulations:

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultive examinations or brief hospitalizations.

20 CFR § 404.1527(d)(2). The ALJ must clearly articulate the reasons for giving less weight to the opinion of a treating physician, and the failure to do so is reversible error. *MacGregor,* 786 F.2d at 1053. We have found "good cause" to exist where the doctor's opinion was not bolstered by the evidence, or where the evidence supported a contrary finding. *See Schnorr v. Bowen,* 816 F.2d 578,

6

582 (11th Cir.1987); *Sharfarz v. Bowen,* 825 F.2d 278, 280-81 (11th Cir.1987). We have also found good cause where the doctors' opinions were conclusory or inconsistent with their own medical records. *See Jones v. Department of Health & Human Services,* 941 F.2d 1529, 1532-33 (11th Cir.1991); *Edwards v. Sullivan,* 937 F.2d 580, 583 (11th Cir.1991).

We do not find the requisite "good cause" in this record and are not convinced by the ALJ's rationale for crediting the opinions of the consulting physicians over those of the treating physicians. First, as to Dr. Timberlake, the ALJ noted that he was not Lewis's treating cardiologist and that his conclusions as to Lewis's heart were not entitled to greater weight than other medical evidence in the record. The ALJ failed to mention that this conclusion applies with equal force to the conclusions of Dr. Fitz-Gerald and Dr. Singleton, neither of whom are cardiologists or treating physicians. Rather than weighing against the treating physicians' credibility, we find that this rationale bolsters the credibility of Dr. Anderson, the only examining specialist.

Second, the ALJ noted that on February 25, 1991, Dr. Anderson reported that Lewis could no longer work as a longshoreman, but did not state that he was unable to work at *any* job. The significance of this omission is ambiguous, however, and we believe that it weighs neither for or against the credibility of Dr. Anderson's opinion. In fact, the evidence revealed that Dr. Anderson expressed his opinion in a May 6, 1992 letter to Lewis's counsel that Lewis was "completely disabled," an opinion that clearly encompassed Lewis's inability to work at all.

Third, the ALJ stated that the other objective evidence did not support the opinions of Lewis's treating physicians. He pointed specifically to a graded exercise test on October 8, 1992, which Lewis was able to complete without discomfort, and to Lewis's admission to Dr. Das that he participates in certain activities, such as housework and fishing. As to the graded exercise test, we are unsure that Lewis's successful completion of a six minute treadmill exercise is necessarily indicative of his ability to work. Nor do we believe that participation in everyday activities of short duration, such as housework or fishing, disqualifies a claimant from disability or is inconsistent with the limitations recommended by Lewis's treating physicians. On the record before us, we do not find

7

substantial evidence to support the ALJ's reliance on the opinions of the consulting physicians over those of Lewis's treating physicians.

We also find solid grounds to question the reliability of the opinion of Dr. Fitz-Gerald whose report was the least favorable to Lewis's claim. Dr. Anderson, Dr. Timberlake and Dr. Singleton agreed as to Lewis's underlying medical condition. All three doctors describe a history of heart disease and a large ventricular aneurysm. For reasons not apparent in the record, however, Dr. Fitz-Gerald reported on May 28, 1991, a "ventricular aneurysm, repaired," but Lewis's medical records do not reveal that his aneurysm was surgically removed or repaired. Nor is there any indication that it has magically disappeared. In fact, Dr. Singleton's consultive examination in which he observed the aneurysm took place over a year *after* Dr. Fitz-Gerald's examination.

This is significant for two reasons. First, it appears that the ALJ credited Dr. Fitz-Gerald's description of a "repaired" aneurysm as he specifically made a finding of a "history of ventricular aneurism [sic], repaired." This finding is clearly not supported by substantial evidence and indeed is contrary to the overwhelming medical evidence. Second, to the extent that Dr. Fitz-Gerald's other conclusions are based upon what appears to be a misdiagnosis, their reliability must be questioned. Specifically, Dr. Fitzgerald's conclusion that Lewis could sit, stand and walk for a full eight hour workday must carry very little weight as we examine the record for substantial evidence to support the ALJ's conclusion.

### III.

When proper weight is given to the reports of Dr. Anderson and Dr. Timberlake there is simply no substantial evidence supporting the Commissioner's decision. The evidence, in fact, strongly supports Lewis's position that his impairments prevent him from engaging in even sedentary work and that he continues to suffer a period of disability. We find that Lewis continued to be disabled after November 17, 1992 and is entitled to disability benefits. Therefore, we REVERSE the opinion of the district court affirming the Commissioner's decision and REMAND with instructions that the case be returned to the Commissioner for the award of benefits.

8

REVERSED and REMANDED with instructions.