[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

**FILED**
**U.S. COURT OF APPEALS**
**ELEVENTH CIRCUIT**
November 3, 2005
**THOMAS K. KAHN**
**CLERK**

No. 05-12597
Non-Argument Calendar

_____

D. C. Docket No. 03-01428-CV-HS-W

WALTER A. WRIGHT,

Plaintiff-Appellant,

versus

JO ANNE B. BARNHART,
Commissioner of Social Security Administration,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

**(November 3, 2005)**

Before CARNES, HULL and WILSON, Circuit Judges.

PER CURIAM:

Walter Wright appeals the district court's order affirming the Social Security

Administration Commissioner's denial of disability insurance benefits, 42 U.S.C. § 405(g), and supplemental security income, 42 U.S.C. § 1383(c)(3). First, Wright argues that the Commissioner erred in denying him benefits for the following reasons: (1) the Administrative Law Judge's (ALJ) decision is not supported by substantial evidence, and (2) because the ALJ did not give sufficient weight to the opinions of several of Wright's physicians. Second, Wright contends that the district court erred when it inadequately reviewed the evidence concerning his alleged disability.

## I.

Wright applied for benefits claiming to be disabled as a result of chronic pain in his back and knees. His alleged disability onset date is January 31, 1997. After the regional commissioner twice denied Wright's claim, the ALJ conducted a hearing, denying Wright benefits on December 28, 1998. Wright appealed to the district court, but because the claim file was lost, the district court remanded the case back to the Appeals Council (AC). The AC vacated the ALJ's decision due to the lost transcript of the hearing, and the AC remanded the case to the ALJ for a de novo hearing, which was held on January 29, 2002. After the second hearing, the ALJ issued a decision denying benefits for the second time on April 5, 2002. That decision is the subject of this appeal. Because Wright appeals on the basis that

substantial evidence does not support the ALJ findings, a review of the facts and medical history is necessary.

## II.

Wright testified that he suffers from pain in his back and knees, as well as depression. Wright takes four pain medications, but he stated that the medications do not alleviate the pain resulting from sacroiliitis (inflammation of the joints in the back), tendinitis (inflammation, irritation, and swelling of a tendon), and a bulging disc. Wright claims that his painkillers cause him to be drowsy to the point of unconsciousness, although Wright's medical reports state that he experienced no significant side effects from his medication—a contradiction Wright could not explain. Although his doctors prescribed physical therapy, Wright stopped going due to the expense, but nonetheless claimed he completed physical therapy in 2000. Wright testified that physical therapy only relieved his pain temporarily. Because Wright is unable to remain in any one position, including sitting or standing, for more than 15 minutes to 1 hour, Wright's medical condition allegedly renders him unable to drive a car or do any work during an eight hour day.

In February 1996 Wright hurt his back while working, and a Duty Status Report from the U.S. Department of Labor (status report) shows that Wright was

3

unable to perform regular work at that time and was limited to carrying two pounds. A second status report also shows strains in both of Wright's knees. In March 1996 Dr. Chester Boston treated Wright, finding him to have an abnormal gait and restricted range of motion from strained muscles and ligaments. Despite the fact that X-rays of Wright's spine came back normal, Boston recommended physical therapy and found that Wright was unable to resume his work. Status reports in March and early April stated that Wright could not resume work and recommended sedentary work.

By mid-April, however, things should have started looking up for Wright. Boston concluded on April 8, 1996 that Wright's MRI showed narrowing of the lumbar spinal canal and a bulging disc but no nerve root impairment. X-rays dated April 9, 1996 showed no radiographic abnormality in the spine or erosive disease but did show some joint problems. An X-ray of Wright's knees from April 9, 1996 showed no abnormalities. A status report from that same day showed that Wright was able to return to work, but he could only perform sedentary work and lift a maximum of five pounds. An April 29, 1996 report stated the same conclusion. On May 3, 1996, Boston noted that a lumbar MRI appeared to be within normal limits and that he could not explain Wright's continued pain. Boston recommended that Wright return to regular work. A status report dated May 22,

4

1996 also concluded Wright was able to perform regular work.

Still, Wright alleged his back and knee pain continued, and as a result he was incapable of working. On September 3, 1996, Dr. Joseph Fritz diagnosed Wright with possible degenerative arthritis of the knees, but X-rays from September 5 indicated no arthritic changes, no fracture, and no definite abnormality. On November 26, 1996, Dr. Bobby Hill diagnosed Wright with chronic knee pain syndrome, and on December 3, 1996, Dr. Lucy King found Wright had symptoms of patella tendinitis but no signs of effusion (accumulation of fluid), instability, or cartilage wear, and found that surgery was unnecessary. On December 16, 1996, Wright returned to Fritz who noted that both the X-rays and the MRI came back normal.

On January 23, 1997, Wright alleged he injured his back while getting up off the couch, but on January 28, 1997 a status report indicated that Wright was able to return to work, although some restrictions were noted. On February 4, 1997, Fritz diagnosed Wright with chronic pain in his back and knees, but his examination showed a normal range of motion in both knees. February 10, 1997 radiology reports show moderate cartilage loss, but no other abnormalities in the knees. And a February 11, 1997 radiology report showed a normal lumbar spine with no evidence of fractures, dislocation, or degenerative change. However, a February

5

16, 1997 status report showed that Wright was unable to work at all due to a lumbar strain and knee problems.

Despite his normal test results, Wright's alleged pain continued. On February 18, 1997, Dr. Alexander Todorov found that Wright suffered from lumbar pain, but felt there was a "significant overstatement of symptoms." Wright's electromyography and nerve conduction velocity studies (EMG/NCV) both came back normal. On February 25, 1997, an MRI administered by King came back normal. On March 3, 1997, Wright saw Boston, who remarked that the X-rays of Wright's lumbar spine showed some hypertrophy, but were otherwise "unremarkable." Likewise, an X-ray of Wright's knees on that same date was also unremarkable.

An April 8, 1997 residual functional capacity assessment came back with exertional limits of occasionally lifting 50 pounds, frequently lifting 25 pounds, limits of 6 hours of standing or walking and 6 hours of sitting in an 8 hour workday. However, on April 28, 1997, King indicated that Wright was capable of sitting and standing no more than 2 hours in an 8 hour workday. On June 12, 1997, a capabilities test performed by Dr. William Lawrence produced the same results as the April 8 test, contradicting King's April 28, 1997 analysis.

Despite his allegedly disabling pain, on February 6, 1998, Wright

6

complained to King that his pain was causing him "difficulties with sports." King recommended continued physical therapy but found surgery unnecessary. In February 1998, two visits to Dr. T.S. Shivashankara revealed chronic pain but no objective cause for the pain because all the tests results, including an MRI, X-rays, and EMG/NCV came back normal. On April 10, 1998, Fritz wrote a letter stating that because Wright had a 10 year history of pain, "it is reasonable to assume that he will be having pain a year from now or for that matter two years from now." And in May 1998, Dr. Steven Hahn identified Wright as suffering from an inflammatory arthritic condition, exacerbated by lifting, twisting, and stair climbing, and consequently, Hahn stated that Wright's physical activity should be limited.

On January 26, 1999, a CT scan of Wright's head showed no abnormalities, and X-rays of his knees and lumbar spine on February 12, 1999, revealed no fractures or significant abnormalities. However, on June 7, 1999, Dr. Ramesh Kumar stated that Wright was diagnosed with spondyloarthropathy and that he was unable to work because of the limitation of movement in his spine. On December 8, 1999, X-rays revealed no bone or joint abnormalities, no recent trauma, no degenerative change, and no fusion, and on March 8, 2000, and June 23, 2000, Kumar found a full range of motion in Wright's knees and recommended physical

therapy. X-rays of Wright's spine on September 7, 2000, showed no injury, but showed minimal lateral spurring, and the knee X-rays on that date came back relatively normal. Finally, on January 24, 2001, Dr. Marcin Gornisiewicz diagnosed Wright with spondyloarthropathy, noting that the condition was stable and that Wright tolerated medication without significant side effects.

At the administrative hearing the vocational expert (VE) testified that given Wright's skills and physical limitations, several jobs existed in the national economy that he could still perform. These include administrative assistant, general entry-level office jobs, payroll and timekeeping clerk, production assembler, telephone operator, and order taker.

Based on all of this, the ALJ determined that Wright was not disabled.

After the ALJ rendered his decision, Wright saw Dr. Hisham Hakim on March 29, 2002. Hakim stated that Wright suffered from several conditions, and as a result, Wright was totally disabled. He felt that Wright could lift 10 pounds occasionally and could sit for 2 hours and stand or walk for 1 hour during an 8 hour day. He also said that Wright suffered severe drug side effects.

Wright submitted Hakim's findings to the AC, but on April 17, 2003, the AC denied review. The AC found that because Hakim had not treated Wright prior to March 2002, and because his clinical findings did not support his "circle-the-

answer" opinions, evidence supporting Hakim's opinion was not sufficient to require the AC to remand the case back to the ALJ for consideration of Hakim's report.  The district court affirmed the ALJ's decision.

**III.**

We review a social security case to determine whether the ALJ applied the correct legal standards and whether the ALJ's decision is supported by "substantial evidence."  See Lewis v. Callahan, 125 F.3d 1436, 1439 (11th Cir. 1997).

First, the ALJ clearly applied the correct legal standards.  In order to qualify for disability benefits, a claimant must meet the Social Security Act's definition of disabled:  suffering from the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(I).  A "physical or mental impariment" under the Act is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § 423(d)(3).

The Act requires that the ALJ must follow a five-step sequence in determining whether a claimant is entitled to supplemental security income (SSI)

9

and disability:

> (1) Is the claimant presently unemployed?
> (2) Is the claimant's impairment severe?
> (3) Does the claimant's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
> (4) Is the claimant unable to perform his or her former occupation?
> (5) Is the claimant unable to perform any other work within the economy?

McDaniel v. Bowen, 800 F.2d 1026, 1030 (11th Cir. 1986). "An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of 'not disabled.'" Id.; 20 C.F.R. § 416.920(a)-(f).

Here, the ALJ followed this sequence correctly, concluding: (1) Wright is currently unemployed; (2) Wright suffers from a severe impairment; (3) Wright's impairment does not meet or equal one of the specific impairments outlined in the regulations; (4) Wright is unable to perform any of his past relevant work; but (5) Wright is able to perform a full range of sedentary work available in significant numbers in the national economy, and, therefore, Wright is not disabled under the Act.

Next, we turn to whether substantial evidence supports the ALJ's findings. "Substantial evidence is more than a scintilla and is such relevant evidence as a

10

reasonable person would accept as adequate to support a conclusion." Id. at 1440.

The ALJ's findings are conclusive if supported by substantial evidence. Wilson v. Barnhart, 284 F.3d 1219, 1221 (11th Cir. 2002). Our role as a reviewing court is limited in that we may not find facts "anew," reweigh evidence, or substitute our own judgment for that of the ALJ, even if we find the evidence preponderates against the ALJ's decision. Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990). The question is not whether we would make the same decision as the ALJ, but whether "the record as a whole" shows the ALJ's decision is "reasonable and supported by substantial evidence." Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983).

In this case, contrary to Wright's contention, substantial evidence clearly supports the ALJ's decision. The record reveals evidence that would lead a "reasonable person" to agree with the ALJ's conclusion. Lewis, 125 F.3d at 1439.

Between 1997 and 2001, Wright's objective clinical test results were generally interpreted as normal or within the normal range. Specifically, X-rays on February 10, 11, and March 3, 1997, March 24, 1998, February 12 and December 8, 1999, and September 6 and September 7, 2000, all performed after the alleged onset date, show an absence of injuries or abnormalities to Wright's lumbar region and knees. Likewise, MRIs on February 19, February 25, March 3, April 8, 1997,

11

and on February 12, February 24, and December 12, 1998, do not suggest a cause for Wright's pain. These MRI results were completely normal or showed "mild" findings of abnormality. EMG/NCV tests on February 19, 1997 and February 24, 1998 were normal, as were CT scans on March 10, 1997 and January 26, 1999. In addition to these normal tests results, the ALJ could have relied on Todorov's belief that Wright's alleged pain involved "a significant overstatement of symptoms." Furthermore, the evidence showed that Wright, who allegedly suffered from a disability that rendered him incapable of working even a sedentary job, went to King's office complaining of knee pain that caused him "difficulties playing sports."

The ALJ did not err in according less weight to the opinions of treating physicians King and Kumar. Testimony or an opinion of a treating physician must be given substantial or considerable weight unless "good cause" is shown to the contrary. Lewis, 125 F.3d at 1440. We have found "good cause" to exist where: (1) the opinion was not bolstered by the evidence; (2) the evidence supported a contrary finding; or (3) the opinion was conclusory or inconsistent with the doctor's own medical records. Id. (internal citations omitted). The ALJ must clearly articulate the reasons for giving less weight to the opinion of a treating physician, and the failure to do so is reversible error. Id. However, when an

incorrect application of the regulations results in harmless error because the correct application would not contradict the ALJ's ultimate findings, the ALJ's decision will stand.  See Diorio v. Heckler, 721 F.2d 726, 728 (11th Cir. 1983).

In this case, contradictory opinions from two other treating physicians, Boston and Todorov, along with the objective tests, constitute substantial evidence for a reasonable person to agree with the ALJ.  The ALJ rejected King's and Kumar's findings that Wright was unable to work because King's and Kumar's opinions were inconsistent with their own clinical findings, objective tests, and the examinations they performed.  Thus, the ALJ afforded the opinions of King and Kumar little weight for "good cause."  Lewis, 125 F.3d at 1440.

Although the ALJ did not explicitly state what weight he afforded the opinions of Hahn, Fritz, Shivashankara, and Gornisiewicz, none of their opinions directly contradicted the ALJ's findings, and, therefore, any error regarding their opinions is harmless.  See Dioro, 721 F.2d at 728.  That is, while each of these doctors found that Wright suffered from chronic pain or conditions associated with chronic pain, not one of these doctors indicated that Wright is unable to perform sedentary work as a result of that pain.

Wright improperly relies on opinions of Hakim that were not presented to the ALJ and to which the AC denied review.  We have held that "when the

13

[Appeals Council] has denied review, we will look only to the evidence actually presented to the ALJ in determining whether the ALJ's decision is supported by substantial evidence." Falge v. Apfel, 150 F.3d 1320, 1323 (11th Cir. 1998). Any opinion of Hakim reported after the ALJ's final decision, and not presented to the ALJ, may not be considered in assessing whether substantial evidence supported the ALJ's determination. Id.

Finally, Wright's argument that the district court did not adequately review the record has no merit. We review de novo the district court's decision on whether substantial evidence supports the ALJ's decision. Wilson v. Barnhart, 284 F.3d 1219, 1221 (11th Cir. 2002). Thus, our limited review in this case is whether substantial evidence supports the findings of the ALJ, not the district court. Graham v. Bowen, 790 F.2d 1572, 1575 (11th Cir. 1986). Because the findings of the district court do not bind or even guide our de novo review of the ALJ decision, Wright's allegation that the district court erred by inadequately reviewing the evidence is irrelevant.

As an aside, however, we note that the district court order shows a painstaking and thorough review of the facts, recognizing the arguments for and against Wright's position before determining that the record as a whole revealed substantial evidence for the ALJ decision.

14

**IV.**

Upon careful review of the record on appeal and consideration of the parties' briefs, we discern no reversible error. Because the ALJ applied correct legal standards and substantial evidence supports the ALJ's decision, we affirm.

**AFFIRMED.**