[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JULY 18, 2007
THOMAS K. KAHN
CLERK

_____

No. 07-10766
Non-Argument Calendar

_____

D. C. Docket No. 05-01120-CV-ORL-31-KRS

JOHN MCDEVITT,

Plaintiff-Appellant,

versus

COMMISSIONER OF SOCIAL SECURITY,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

**(July 18, 2007)**

Before BIRCH, CARNES and WILSON, Circuit Judges.

PER CURIAM:

John McDevitt ("McDevitt") appeals the district court's order affirming the

Social Security Commissioner's ("the Commissioner's") denial of a period of disability, disability insurance benefits, and supplemental security income. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). On appeal, McDevitt argues that the Administrative Law Judge ("ALJ") erred by failing to develop the record with regard to the impact of the side effects from the medications he was taking. Specifically, he argues that the ALJ erred in finding that he had not testified that the medications he was taking caused an extreme lack of concentration. After careful review, we reverse the district court and remand this case with instructions that it be returned to the Commissioner for further proceedings consistent with this opinion.

## BACKGROUND

In January 2002, McDevitt applied for a period of disability, disability insurance benefits, and supplemental security income. He alleged that a ruptured thoracic disc, muscle spasms, loss of the use of his right arm, and extreme pain had rendered him unable to work as of August 8, 2001. McDevitt's application was denied initially and upon reconsideration. McDevitt requested a hearing, and on June 2, 2004, an ALJ heard his case.

At the hearing, McDevitt testified that he was 50 years old, not working at that time, and receiving food stamps. McDevitt told the ALJ that on most days he vomited in the morning, but his stomach usually settled by 10:00 a.m. He would

occasionally take Benadryl to settle his stomach, but this made him sleepy.

McDevitt testified that he had extreme pain in his shoulders, right arm, and right leg. In addition, three of his fingers and his thumb were numb. He blamed these problems on a bulging or herniated thoracic disc that was causing his right arm to shrink. He also had occasional pain in his lower back, during which he had to lie on the floor and could not stand straight.

McDevitt stated that three or four weeks prior to the hearing he went to the emergency room due to a seizure. The doctors believed the seizure was caused by alcohol withdrawal, and they prescribed him Librium to ease the withdrawal symptoms. McDevitt told the ALJ that Librium caused "extreme lack of concentration" and made him unsteady on his feet.

McDevitt testified that in 1989 he worked in boat sales, but was run over by a boat and ruptured a disc in his neck. He had surgery on his neck in 1990. He kept working in boat sales until 1993. In 1995 and 1996, he worked in real estate. In 1997, he worked for a telemarketing company that went out of business. In 1998 and 1999, he worked in resort marketing, and in 1999 until 2001, he worked at a sandwich shop. When the ALJ asked if he could do telemarketing again, McDevitt responded that he didn't know "because it requires concentration." He stated that he definitely could not do boat sales because it was extremely physical,

3

and also stated that he could not work in a restaurant.

McDevitt thought he could lift 20 pounds, stand for an hour, walk for about an hour, and sit in a straight-backed chair for at least two hours. He had considered a data entry job, but was inhibited by "the lack of concentration," pain in his arm, and nausea.

Numerous medical records document McDevitt's back problems, which were aggravated by a fall in August 2001. His medical records also show that he had an ongoing problem with alcohol abuse.

His medical records reflect that in April 2002, McDevitt went to the hospital complaining of severe pain in his right arm and chest and was admitted for further evaluation. The examining physician recorded that "he ha[d] been noted to drink frequently." While in the hospital, he suffered a seizure that was determined to be related to alcohol withdrawal. He was given medication, including Librium, and released after he was stabilized. In May 2002, McDevitt stated in a Reconsideration Disability Report that an increase in pain had required an increase in medication that had "severely decreased [his] ability to concentrate" and that he was currently "unable to concentrate."

In September 2002, Dr. William P. Friedenberg, Ph.D., conducted a physiological evaluation of McDevitt at the request of the Social Security

4

Administration. McDevitt told Friedenberg that he was taking hydrocodone, Neurontin, Phenergan, and Skelaxin. McDevitt also told Friedenberg that he was suffering "emotional problems in the form of reactive anxiety, panic attacks, and [depression]." Based on the interview, Dr. Friedenberg concluded that McDevitt's overall memory and concentration were moderately impaired. In addition to his existing physical ailments, Dr. Friedenberg diagnosed McDevitt with depressive disorder, adjustment disorder with mixed anxiety and depressed mood, and alcohol abuse. Also in September 2002, McDevitt filled out Florida Department of Health questionnaire indicating that he was taking hydrocodone, Neurontin, and Skelaxin, and that this medication caused nausea, loss of concentration, and drowsiness.

In October 2002, Dr. Val J. Bee, Psy.D., a state agency clinical psychologist, examined McDevitt to assess his mental residual functioning capacity. Among other things, Dr. Bee found that McDevitt's ability to maintain attention and concentration for extended periods was moderately limited. Dr. Bee concluded that McDevitt's "condition may cause diminished concentration and efficiency, but he appear[ed] able to meet the mental demands of well structured task activity." Dr. Bee noted that McDevitt reported drinking about two glasses of wine a day.

In March 2003, McDevitt was admitted to the hospital for intractable vomiting. While his discharge diagnoses included exposure to tuberculosis,

5

esophagitis, gastritis with hemorrhage, duodenitis, continuous alcohol dependence, and alcohol withdrawal, none of the physicians who treated him during this hospitalization indicated the causes of these ailments.

After reviewing the medical evidence, the ALJ found that McDevitt had "post cervical/lumbar surgeries with back, neck, and bilateral upper extremity pain, and [that] he ha[d] a substance addiction disorder, allegedly in remission, hypertension, and a history of tuberculosis." After finding that McDevitt was not engaged in substantial gainful activity, the ALJ concluded that while these impairments were severe, they did not meet any of the impairments in the regulations. Accordingly, the ALJ proceeded to consider whether McDevitt had one or more impairments that would prevent him from returning to any of his past work experiences.

The ALJ found that McDevitt had the residual functional capacity ("RFC") to perform past relevant work, namely, telemarketing, and therefore concluded that he was not disabled. In making this determination, the ALJ noted that the state agency psychologist had found that McDevitt was moderately limited with regard to concentration. However, the ALJ was persuaded that McDevitt's concentration was impaired because of his ongoing alcohol abuse at the time of the evaluation. The ALJ found that "[l]ater evidence in the record does not show significant

6

memory or concentration deficits nor does it show any ongoing mental health treatment." The ALJ specifically found that McDevitt "did not mention any concentration or memory difficulties at the hearing." The ALJ stated that McDevitt had "failed to address his ongoing abuse of alcohol in the past which ha[d] played a significant role in his health problems."

McDevitt requested review of the ALJ's decision by the Appeals Council, which was denied. McDevitt then sought review in the district court. The district court adopted the magistrate judge's report and recommendation and affirmed the ALJ's determinations.

## STANDARD OF REVIEW

We review a social security case to determine whether the ALJ applied the correct legal standards and whether the ALJ's decision is supported by "substantial evidence." *See Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997). In reviewing the ALJ's decision, "[w]e may not decide facts anew, reweigh the evidence, or substitute our judgment for that of the [ALJ]." *Philips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (internal quotation marks omitted).

## DISCUSSION

The Social Security regulations provide a five-step sequence for determining whether a claimant is disabled. The ALJ must ask whether: (1) the claimant is

presently unemployed; (2) the claimant's impairment is severe; (3) the claimant's impairment meets or equals one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App.1; (4) the claimant is unable to perform his or her former occupation; and (5) the claimant is unable to perform any other work within the economy. *McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).

The ALJ followed the five-step analysis and found that McDevitt satisfied the first and second prong, but not the third prong. Accordingly, McDevitt had to satisfy the fourth prong by showing that he could not perform any of his former jobs. The ALJ determined that McDevitt's RFC would not limit him from performing work as a telemarketer; therefore, McDevitt was not disabled. On appeal, McDevitt asserts that the ALJ failed to properly develop the record by not considering his testimony as to the side effects of medications that he was taking and whether those side effects prevented him from performing the job of a telemarketer. We agree.

In determining whether a claimant can return to past relevant work, the ALJ must determine the claimant's RFC, using all relevant medical and other evidence in the record. *Phillips*, 357 F.3d at 1238. We have stated that an ALJ has a duty to investigate the possible side effects of medications taken by a claimant. *See Cowart v. Schweiker*, 662 F.2d 731, 737 (11th Cir. 1981). We have also stated that

"[i]t is conceivable that the side effects of medication could render a claimant disabled or at least contribute to a disability." *Id.*

The ALJ specifically stated that "[t]he claimant did not mention any concentration or memory difficulties at the hearing, although he said he was depressed." This is inaccurate. McDevitt specifically testified that the medication he was taking at the time, Librium, caused extreme lack of concentration. McDevitt also testified that he took Benadryl, which made him sleepy. When the ALJ asked McDevitt if he could perform the duties of a telemarketer, McDevitt replied that he did not know because "it requires concentration." While the ALJ found McDevitt's testimony "somewhat exaggerated," the ALJ made no finding, as to credibility or otherwise, regarding McDevitt's claim that his medications caused severe concentration problems and made him drowsy. Since the ALJ failed to make a finding as to this claim, the ALJ's determination that McDevitt could perform the duties of a telemarketer was not based on substantial evidence in the record.

Accordingly, we reverse the district court and remand this case with instructions that it be returned to the Commissioner for further proceedings consistent with this opinion.

**REVERSED AND REMANDED**.