[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 10-11331
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
SEPTEMBER 21, 2010
JOHN LEY
CLERK

D.C. Docket No. 6:08-cv-01876-DAB

MONICA LYA GILABERT,

                                                          Plaintiff - Appellant,

versus

COMMISSIONER OF SOCIAL SECURITY,

                                                          Defendant - Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(September 21, 2010)

Before CARNES, MARCUS and KRAVITCH, Circuit Judges.

PER CURIAM:

    Monica Gilabert appeals from the Commissioner of Social Security's denial

of her application for disability benefits. According the Commissioner's decision

the deference required by law, we affirm.

## I. Background

In 2004, Monica Gilabert filed an application for disability benefits, alleging an inability to work due to bipolar and panic disorders, spastic colon, and thyroid disease. She claimed an onset date of November 16, 2003, soon after she lost her job as a makeup artist.

Gilabert experienced numerous medical difficulties after her alleged onset date.[1] She suffered physical complications following a 2003 gastric bypass operation, including a spastic colon and gastric ulcer that required her hospitalization. In February 2005, Gilabert was admitted to the hospital after overdosing on Seroquel and was diagnosed with bipolar disorder and opiate dependence.[2] In May 2005, Gilabert was involuntarily admitted to Orlando Regional Hospital for suicidal ideation. In August 2005, she was admitted to the hospital again for moderate bipolar disorder and stimulant abuse.

In October 2006, Dr. Adly Thebaud, Gilabert's treating physician, completed a mental residual functioning capacity (RFC) evaluation for Gilabert.

---

[1] Prior to her onset date, Gilabert had been diagnosed with recurrent and moderate depression, panic disorder, and anxiety. Her treating doctor, however, noted that she was well enough to travel and work in 2002 and 2003.

[2] Seroquel is an anti-psychotic medication used to treat bipolar disorder.

He noted that she was having hallucinations and that she was paranoid. He stated that she suffered from depression, mood swings, irritability, and could not handle work stress, concentrate, or function in the workplace. Despite this assessment, between 2003 and 2007, Thebaud consistently rated Gilabert's Global Assessment of Functioning (GAF) from the high 50s to 60s, a rating indicating only moderate difficulty in functioning. In March 2004, Thebaud also stopped all of Gilabert's medications except Trazodone after Gilabert informed him that she was pregnant.

Two other doctors also performed RFC evaluations on Gilabert between 2003 and 2007.[3] In June 2004, Dr. Alvarez-Mullin completed an RFC and noted that Gilabert had suffered only mild limits on her daily activities and social functioning. He also found that Gilabert had moderate limitations in concentration but had the ability to work a full week. In May 2005, Dr. Bee completed a psychiatric review at the state's request. Although he noted Gilabert's mood disturbance and panic disorder, he found only mild limits on her social functioning and concentration. He also completed an RFC consistent with Dr. Alvarez-Mullin's evaluation.

---

[3] An RFC assessment helps determine "that which an individual is still able to do despite the limitations caused by his or her impairments. 20 C.F.R. § 404.1545(a)." *Phillips v. Barnhart*, 357 F.3d 1232, 1238 (11th Cir. 2004).

After her initial application for disability benefits was denied, Gilabert appealed this decision to an administrative law judge (ALJ). At a hearing in February 2007, Dr. Neil Lewis testified as a consulting psychologist for the Commissioner of Social Security. Lewis disagreed with Thebaud's 2006 RFC evaluation, stating that it was inconsistent with the level of severity described in Thebaud's progress notes and in the GAF scores he assigned Gilabert. In rebuttal, Gilabert introduced Thebaud's deposition testimony. This testimony stated that he had based the RFC on his progress notes and his experience treating Gilabert. He also testified that although Gilabert's bipolar disorder would make her appear more normal at times, during the mood swings she was unable to function and could not work. At a supplemental hearing, Lewis responded to Thebaud's deposition testimony. He agreed that Gilabert had a documented history of chronic affective disorder that had caused more than minimal limitations on her ability to work for at least two years, but he noted that on some occasions Gilabert's mental status exams indicated that her concentration was fine.

After hearing this evidence, the ALJ stated that if he found Dr. Thebaud's RFC credible, "there would be no question that [Gilabert could not] work." In his decision, however, the ALJ "discredited" Dr. Thebaud's RFC as inconsistent with Thebaud's own notes and the medical record as a whole. In particular, the ALJ

4

noted that Dr. Thebaud's GAF scores did not support the level of disability in the RFC. Giving weight to the opinions of the non-examining physicians and taking the record evidence as a whole, he concluded that Gilabert did not qualify for disability benefits.

Gilabert appealed this decision to the district court, arguing that the ALJ had failed to give the necessary weight to opinion of her treating physician, Thebaud, and that substantial evidence did not support the ALJ's decision. The district court approved the Commissioner's denial of benefits.[4] It concluded that the ALJ had given the proper weight to Thebaud's notes but not to the RFC assessment because the RFC was inconsistent with those notes. Gilabert appeals.

## II. Discussion

When reviewing the ALJ's decision, we ask whether it was supported by substantial evidence and whether the correct legal standards were applied. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). "Substantial evidence is something more than a mere scintilla, but less than a preponderance. If the Commissioner's decision is supported by substantial evidence, this court must affirm, even if the proof preponderates against it." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (internal quotation marks omitted). Under this

---

[4] The parties consented to a trial before a magistrate judge.

limited standard of review, we will not decide the facts anew, make credibility determinations, or re-weigh the evidence. *Moore*, 405 F.3d at 1211.

Gilabert argues that the ALJ applied the wrong legal standard and made findings unsupported by substantial evidence when he discredited Thebaud's RFC and relied on the opinion of a non-examining consultant. In particular, she contends that the ALJ was required to consider Thebaud's RFC because it was consistent with his progress notes and her frequent hospitalizations. Furthermore, she argues that the ALJ's reliance on Thebaud's GAF scores to discredit his RFC was unwarranted because GAF scores do not take into consideration occupational functioning.

The opinion of a treating physician "must be given substantial or considerable weight unless 'good cause' is shown to the contrary." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). Good cause is shown when the: "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004). Where the ALJ articulated specific reasons for failing to give the opinion of a treating physician controlling weight, and those reasons are supported by substantial evidence, there is no reversible error. *Moore*,

6

405 F.3d at 1212.

In this case, therefore, the critical question is whether substantial evidence supports the ALJ's articulated reasons for rejecting Thebaud's RFC. The ALJ explained that Thebaud's RFC was "inconsistent with his own treatment record, as well as inaccurate." In particular, he found that Thebaud's RFC assessment conflicted with his frequent decisions to assign Gilabert GAF scores that indicated only moderate psychiatric symptoms. The ALJ also cited Lewis's testimony as further evidence of this discrepancy.

Here, more than a "mere scintilla" of evidence supports the ALJ's reasoning. *Dyer*, 395 F.3d at 1210. It is undisputed that the GAF scores Thebaud assigned to Gilabert indicated only moderate difficulty in functioning and were therefore inconsistent with the severe limitations that Thebaud outlined in his RFC assessment. Furthermore, two non-examining consultants found Gilabert to have only mild to moderate psychiatric symptoms. Finally, Thebaud took Gilabert off all of her medications except Trazadone in March 2004 when she reported that she was pregnant, providing further evidence that her condition was not as severe as Thebaud's RFC suggested.

Accordingly, the decision of the district court is **AFFIRMED**.