[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 15-13941
Non-Argument Calendar
_____

D.C. Docket No. 1:14-cv-23175-JJO

VICTOR BAEZ,

Plaintiff-Appellant,

versus

COMMISSIONER OF SOCIAL SECURITY,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(July 27, 2016)

Before MARTIN, JILL PRYOR and ANDERSON, Circuit Judges.

PER CURIAM:

Victor Baez appeals the district court's order affirming the decision of the Commissioner of the Social Security Administration (the "Commissioner") to deny his applications for disability insurance benefits and supplemental security income (collectively, "disability benefits"), pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).  He argues that the administrative law judge (the "ALJ") procedurally erred by failing to properly consider and assign weight to several medical opinions in the record.  Baez also contends that the ALJ's determination of his residual functional capacity ("RFC") is not supported by substantial evidence.  Upon review of the record and consideration of the parties' briefs, we vacate the district court's order and remand with instructions to remand to the Commissioner.[1]

I.

In July 2011, Baez applied for disability benefits with the Social Security Administration, asserting that he was disabled due to an injury to his lower back.  The Commissioner denied his applications initially and upon reconsideration, explaining that Baez was not disabled because, given his age, education, and RFC, he could perform other work.  Baez then requested a hearing before an ALJ, which was held in November 2012.

In support of his applications before the ALJ, Baez submitted reports from multiple treating and examining physicians.  Three treating physicians are relevant

---

[1] Baez's unopposed motion to file a reply brief out of time is granted.

to this appeal.[2]  First, Baez sought treatment from Dr. Todd Singer, a chiropractor. Dr. Singer's reports indicated that Baez complained of mid and low back pain.  In a final narrative report, Dr. Singer discharged Baez, concluding that Baez had "sustained a residual permanent partial impairment approximating no less than (5 to 7%) percent to the body as a whole."  Report of Dr. Singer, Doc. 10-1 at 33.[3]

Second, Dr. Kingsley Chin, an orthopedic surgeon, treated Baez.  After months of steroid injections, Dr. Chin operated to fuse Baez's vertebrae to address Baez's lower back pain.  In evaluation after the surgery, Dr. Chin stated that Baez had post-operative pain and a limited range of motion with some weakness and recommended that Baez start physical therapy.  According to a later report, an x-ray showed that the fixation device was in a good position but that there was no fusion of the vertebrae yet.  Noting that Baez had substantial mechanical back pain with some leg weakness and that the CT scan showed pseudarthrosis[4] of the L5-S1 disc space, Dr. Chin stated, "I think he has a pseudoarthrosis [sic] . . . .  I therefore recommended unilateral pedicle screws at L5-S1 to support this disc."  Report of Dr. Chin, Doc. 10-1 at 214.

---

[2] Although Baez provided reports from many physicians, we discuss only those relevant to the issues raised here.

[3] "Doc." refers to the docket entry in the district court record in this case.

[4] Pseudarthrosis, or nonunion, is the result of a failed spinal fusion.

3

Third, Baez saw Dr. James Piccolino, another chiropractor. Dr. Piccolino observed that Baez had pain upon movement in all ranges of motion of the lumbar spine region. He diagnosed Baez with post-surgical lumbar pain and instructed Baez to avoid heavy lifting.

Various other physicians examined but did not treat Baez. Dr. Willy Chua examined Baez for shortness of breath and bronchial asthma. Examination notes from Dr. Thesselon Monderson, an orthopedic surgeon, stated that Baez experienced pain due to a lumbar strain with underlying degenerative disc disease and recommended work restrictions as needed. Dr. Basil Yates conducted a neurological evaluation and recorded that Baez reported pain in his legs and numbness of the bottom of his feet. Dr. Yates reported that, although he was unfamiliar with the type of fusion Baez underwent, an x-ray "appear[ed] to show a lack of continuity between a transverse rod and a screw." Report of Dr. Yates, Doc. 10-1 at 242. An orthopedic surgeon, Dr. Rolando Sanchez-Medina, described that one of Baez's screws from Dr. Chin's surgery was broken and that Baez was "unable to work." Report of Dr. Sanchez-Medina, Doc. 10-1 at 240.

Examination notes from Dr. Jonathan Gottlieb, another orthopedic surgeon, stated that Baez complained of back pain rating 10 out of 10 on a pain scale and numbness and weakness when walking. Dr. Gottlieb observed that Baez moved easily from a seated to a standing position, but that Baez had no range of motion in

4

any plane due to discomfort.  According to Dr. Gottlieb, an x-ray of Baez's back showed a fractured facet screw; he concluded that Baez "may have a nonunion." Report of Dr. Gottlieb, Doc. 10-1 at 276.  Dr. Gottlieb wrote that Baez was not interested in participating in rehabilitation and referred him to pain management.

Dr. Minal Krishnamurthy neither treated nor examined Baez, but consulted with the State to review Baez's file to determine Baez's RFC.  Dr. Krishnamurthy noted that Baez had some postural limitations (e.g., he could only occasionally climb ladders but could frequently stoop and kneel for an unlimited time) and environmental limitations (e.g., he should avoid concentrated exposure to vibrations but could withstand unlimited extreme cold or heat).  The doctor anticipated that Baez's condition would improve such that Baez would be capable of working without those limitations within the year.

After a hearing in which Baez and a vocational expert testified, the ALJ determined that Baez was not disabled within the meaning of the Social Security Act and thus denied his applications for disability benefits.  The ALJ used the regulations' five-step, sequential evaluation process to determine whether Baez was disabled.  *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).  First, the ALJ found that Baez had not engaged in substantial gainful activity since May 1, 2011. Second, the ALJ found that Baez had the severe impairments of "degenerative disc disease of the lumbar spine, status post bilateral L5-S1 hemi-laminectomies for L5-

5

S1 disc herniation on May 18, 2011." ALJ Decision, Doc. 10 at 31. Third, the

ALJ determined that that Baez did not have an impairment that met or medically

equaled the severity of an impairment listed in 20 C.F.R. Part 404, subpart P,

appendix 1. Fourth, the ALJ concluded that Baez had "the residual functional

capacity to perform a limited range of light work." *Id.* at 32. Specifically, the ALJ

found:

> [Baez] requires a sit/stand option at will. [Baez] can occasionally climb ramps/stairs, cannot climb ladders/ramps/scaffolds, and can occasionally kneel, crouch, stoop, and crawl. He can frequently handle, reach, push/pull, and cannot be exposed to dangerous machinery, heights, or extreme cold or heat. [Baez] is able to understand, remember, and carry out simple job instructions, respond appropriately to supervision, co-workers, and usual work situations, and to deal with changes in a routine work setting.

*Id.*

The ALJ discussed Dr. Chin's treatment notes, including his opinion that

Baez might have pseudarthrosis, but did not assign any weight to Dr. Chin's

opinions. The ALJ noted that the record contained reports by licensed

chiropractors but stated that they were not acceptable medical sources.

Additionally, the ALJ found that Dr. Sanchez-Medina's opinion was inconsistent

with Dr. Monderson's opinion and was "of little evidentiary value" because the

"marginally legible" clinical notes cast little light on Baez's condition and

contained scant supporting evidence. *Id.* at 34. The ALJ accorded "some weight"

to Dr. Monderson's opinion because it was consistent with the medical evidence on

record. *Id.* at 35. The ALJ also accorded "some weight" to Dr. Yates's opinion, noting the continued presence of low back pain and the "possibility of lack of continuity between a transverse rod and screw." *Id.*

Fifth, the ALJ found that Baez was unable to perform any past relevant work. Based on Baez's age, education, work experience, and RFC, the ALJ concluded that there were a significant number of jobs in the national economy he could perform, including surveillance monitor, phone info clerk, and order clerk.

Baez appealed the ALJ's decision to the Appeals Council, submitting as additional evidence records from Dr. Ernesto Urday and a bio-psychosocial assessment conducted after the ALJ issued the decision. The Appeals Council denied Baez's request for review.

Baez sought review of the Commissioner's decision in the district court. Baez then moved for summary judgment, arguing, among other things, that the ALJ failed to articulate the weight it gave to many of the medical opinions in the record and that the ALJ's RFC and credibility assessments were unsupported by substantial evidence. The Commissioner also moved for summary judgment. A magistrate judge affirmed the Commissioner's decision, granted the Commissioner's motion for summary judgment, and denied Baez's motion for summary judgment. Baez now appeals.

## II.

In Social Security appeals, we review whether the Commissioner's decision is supported by substantial evidence and based on proper legal standards. *Winschel v. Comm'r of Soc. Sec.,* 631 F.3d 1176, 1178 (11th Cir. 2011).  We review the decision of an ALJ as the Commissioner's final decision where, as here, the ALJ denies benefits and the Appeals Council denies review of the ALJ's decision.  *Doughty v. Apfel,* 245 F.3d 1274, 1278 (11th Cir. 2001).  We may not reweigh the evidence or decide facts anew, and must defer to the ALJ's decision if it is supported by substantial evidence even if the evidence may preponderate against it.  *See Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005).

## III.

Baez argues that the ALJ erred in failing to articulate the weight he accorded to the medical opinions of Drs. Chin, Chua, Gottlieb, Krishnamurthy, Piccolino, Sanchez-Medina, Singer, and Urday.

"Medical opinions are statements from physicians and . . . other acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s)."  20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2).  In evaluating medical opinions, the ALJ should consider factors such as the examining relationship, the treatment relationship, the doctor's specialization, whether the opinion is amply supported, and whether the opinion is consistent with

8

the record. *Id.* §§ 404.1527(c), 416.927(c). Generally, the opinions of treating physicians are given more weight than non-treating physicians, and the opinions of examining physicians are given more weight than non-examining physicians. *See id.* §§ 404.1527(c)(1)-(2), 416.927(c)(1)-(2).

"[T]he ALJ must state with particularity the weight given to different medical opinions and the reasons therefor." *Winschel*, 631 F.3d at 1179. "In the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." *Id.* (internal quotation marks omitted).

Testimony or an opinion of a treating physician must be given substantial or considerable weight unless "good cause" is shown to the contrary. *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). We have found "good cause" to exist where: (1) the opinion was not bolstered by the evidence, (2) the evidence supported a contrary finding, or (3) the opinion was conclusory or inconsistent with the doctor's own medical records. *Id.* An ALJ's failure to give reasons for according less weight to the opinion of a treating physician is reversible error. *Id.*

Here, the ALJ properly assigned weight, albeit not explicitly, to some of the medical opinions. The ALJ stated that Dr. Sanchez-Medina's opinion was "of little evidentiary value" because his opinion was inconsistent with Dr. Monderson's and had "little in the way of supporting evidence." ALJ Decision

9

at 6, Doc. 10 at 34.  Moreover, the ALJ noted that Dr. Sanchez-Medina's conclusion that Baez was unable to work was a determination reserved for the Commissioner and thus was not entitled to special weight.  20 C.F.R. §§ 404.1527(d)(1), 416.927(d)(1).  The ALJ also gave less weight to Drs. Singer and Piccolino because chiropractors are not acceptable medical sources.  The ALJ had the discretion to decline to consider their opinions to show the severity of impairment.  *See id.* §§ 404.1513(d)(1), 416.913(d)(1) (excluding chiropractors from the list of "acceptable medical sources").  These statements were sufficient to reflect the particular weight the ALJ assigned to these physicians in reaching the final decision.  *See Winschel*, 631 F.3d at 1179

Additionally, the ALJ committed no reversible error in failing to discuss the opinions of Drs. Krishnamurthy, Chua, and Urday.  First, Dr. Krishnamurthy never treated Baez; therefore, the ALJ was not required to accord any particular weight to that medical opinion.  *See Lewis*, 125 F.3d at 1440.  In any case, the ALJ's RFC determination found Baez's capacities to be more limited than Dr. Krishnamurthy's assessment, rendering harmless any error in failing to discuss or assign weight to the opinion.  *See Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983) (holding that the complained-of error was harmless because it did not have an impact on the step being challenged).  Second, any error the ALJ made in failing to address Dr. Chua's opinion was also harmless because Dr. Chua's

10

treatment notes are immaterial to the current claim:  he treated Baez for shortness of breath and bronchial asthma, not back pain.  *See id.*  Third, Baez failed to submit to the Commissioner Dr. Urday's records until after the ALJ rendered its decision.  Baez has not challenged the Appeals Counsel's denial of review.  Therefore, Baez cannot challenge the ALJ's failure to accord weight to an opinion that Baez did not provide.  *See Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1262, 1265-66 (11th Cir. 2007).

The ALJ did err, however, in failing to assign weight to Dr. Chin's opinion.  As a treating physician, Dr. Chin's opinions were entitled to substantial or considerable weight unless the ALJ had good cause for discounting them.  *See Lewis*, 125 F.3d at 1440.  The ALJ "must specify what weight is given to a treating physician's opinion and any reason for giving it no weight, and failure to do so is reversible error."  *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986).  Accordingly, the ALJ committed reversible error here.

The Commissioner argues that the ALJ made no error because Dr. Chin's records included only diagnoses and did not establish Baez's physical limitations.  We are unpersuaded.  Medical reports should include medical source statements that discuss what a claimant can still do despite any impairment.  *See* 20 C.F.R. §§ 404.1513(b)(6), 416.913(b)(6).  That said, "the lack of the medical source statement will not make the report incomplete."  *Id.*

§§ 404.1513(b)(6), 416.913(b)(6).  Thus, the absence of a medical source statement does not relieve the ALJ from the duty to assign substantial or controlling weight to the opinion of a treating physician absent good cause to the contrary.  Even without the medical source statement, Dr. Chin's records were comprehensive.  The ALJ needed to assign some weight to Dr. Chin's opinion as a treating physician and, if necessary, explain why that weight is less than substantial or controlling.  *See Winschel*, 631 F.3d at 1179 (vacating an ALJ's decision and remanding when the ALJ failed to give a treating physician's medical opinion considerable weight).

The ALJ similarly erred in failing to discuss Dr. Gottlieb's opinion.  It is true that Dr. Gottlieb only examined, but did not treat, Baez.  It is also true that "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision."  *Dyer,* 395 F.3d at 1211.  In *Dyer*, we affirmed an ALJ's decision because, although the decision failed to mention one aspect of a doctor's opinion—the claimant's taking of one pain medicine—it discussed the doctor's opinion generally.  *Id.*  Here, conversely, the ALJ neglected to discuss Dr. Gottlieb's opinion at all, much less assign it a particular weight.

Because the ALJ's decision suggests that the ALJ failed to consider pertinent elements of an examining physician's medical opinion, we conclude that the ALJ erred.  *See Winschel*, 631 F.3d at 1179.  Like Drs. Chin and Yates, Dr.

Gottlieb suspected that Baez had pseudarthrosis. Despite the corroborating opinions of a treating physician and another examining physician, the ALJ ignored Dr. Gottlieb's opinion. Instead, the ALJ accorded only "some weight" to Dr. Yates's opinion regarding the "possibility of a lack of continuity between a transverse rod and screw" and described Baez's pain merely as post-surgical pain. ALJ Decision at 6, Doc. 10 at 35. The additional opinion of Dr. Gottlieb, if properly considered, may have demonstrated that the extent of Baez's injuries and limitations was greater than the ALJ opined. We cannot say that the ALJ's error was harmless when the ALJ failed to discuss an examining physician's opinion that was consistent with the treating physician's opinion (to which the ALJ also failed to assign weight), as the error could have altered Baez's RFC.

"It is possible that the ALJ considered and rejected [Drs. Chin and Gottlieb's] medical opinions, but without clearly articulated grounds for such a rejection, we cannot determine whether the ALJ's conclusions were rational and supported by substantial evidence." *Winschel*, 631 F.3d at 1179. Accordingly, we vacate the district court's order and remand with instructions to remand to the Commissioner for further proceedings.

**VACATED AND REMANDED.**