[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 14-14311
Non-Argument Calendar
_____

D.C. Docket No. 8:13-cv-01711-EAK-MAP


KANELLA KAREN HANTZIS,

                                                      Plaintiff-Appellant,

versus

COMMISSIONER OF SOCIAL SECURITY,

                                                      Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(April 19, 2017)

Before HULL, JULIE CARNES and JILL PRYOR, Circuit Judges.

PER CURIAM:

Kanella Hantzis pro se appeals the district court's order affirming the decision of the Commissioner of the Social Security Administration ("Commissioner") to deny her application for disability insurance benefits ("DIB"), pursuant to 42 U.S.C. § 405(g).  On appeal, Hantzis argues that the Administrative Law Judge ("ALJ") failed to apply the correct legal standards in weighing the opinions of her treating physicians.  Upon careful review of the record, we find no reversible error in the ALJ's evaluation of the medical source opinions.

## I.  FACTUAL BACKGROUND

Hantzis began experiencing chronic back and leg pain after she fell and injured her back twice in 1989.  By 1993, Hantzis had stopped working.

In 2009, Hantzis applied for benefits due to vertigo, degenerative disc disorder, and hip dysfunction with an onset date of July 1, 1993.  In 2011, Hantzis and a vocational expert ("VE") testified at a hearing before an ALJ.  Afterward, the ALJ denied Hantzis's application.

Following the five-step evaluation process, the ALJ found that: (1) Hantzis had not engaged in substantial gainful employment between July 1, 1993 and December 31, 1998, her date of last insured; (2) she had the severe impairments of light L5 radiculopathy with bilateral lumbar paraspinal myofascial pain syndrome, degenerative disc disease at CS-6 with resulting cervical spine pain, tibia fracture,

vertigo, and migraine headaches; (3) her impairments, alone and in combination, did not meet or medically equal a listed impairment; and (4) she was not disabled because she had the residual functional capacity ("RFC") to perform a full range of light work; which included her past relevant work as a waitress and a cosmetologist.  See 20 C.F.R. § 404.1520(a)(4)(i)-(iv).  Alternatively, the ALJ found that Hantzis was not disabled because a significant number of light work and sedentary work jobs existed in the national economy that she could perform, including housekeeper, mail clerk, electronic worker, charge account clerk, order clerk, and ticket seller. See id. § 404.1520(a)(4)(v).

The Appeals Council denied Hantzis request for review, making the ALJ's decision the final decision of the Commissioner.  See Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001).

## II.  DISCUSSION

On appeal, Hantzis's pro se brief, liberally construed, argues that the ALJ, in assessing her RFC at steps four and five, should have assigned more weight to the opinions of Drs. Robert Ho and Mark Brennan, who had treated her for several years.[1]

---

[1]In the district court, plaintiff Hantzis also argued that the ALJ erred by: (1) disregarding the 2009 retrospective opinion of Dr. Gaurav Malhotra and (2) by failing to include Hantzis's vertigo and migraine symptoms in the RFC assessment and the hypothetical questions posed to the VE.  Hantzis failed to raise these two issues in her appeal brief and thus has abandoned them. See Sapuppo v. Allstate Floridian Ins. Co., 739 F.3d 678, 681-82 (11th Cir. 2014); Timson v.

## A.    Evaluating Medical Opinions

In considering at the fourth and fifth steps whether a claimant can perform her past relevant work or can perform other work in the economy, the ALJ must determine a claimant's RFC by considering all relevant medical and other evidence.  See Phillips v. Barnhart, 357 F.3d 1232, 1238-39 (11th Cir. 2004); see also 20 C.F.R. §§ 404.1520(e), 416.920(e).  RFC is a medical assessment of what the claimant can do in a work setting despite any mental, physical, or environmental limitations caused by the claimant's impairments or related symptoms.  20 C.F.R. §§ 404.1545(a), 416.945(a).

The ALJ must consider the different medical opinions found in the record in assessing the claimant's RFC.  In determining how much weight to give each medical opinion, the ALJ considers such factors as the examining or treating relationship, whether the opinion is well-supported, whether the opinion is consistent with the record, and the doctor's specialization.  See 20 C.F.R. § 404.1527(c).  A treating physician's medical opinion "must be given substantial or considerable weight unless 'good cause' is shown to the contrary."  Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1159 (11th Cir. 2004) (quotation marks omitted); see also 20 C.F.R. §§ 404.1527(c)(2) (requiring the ALJ to give "good

---

Sampson, 518 F.3d 870, 874 (11th Cir. 2008).  Further, to the extent Hantzis now challenges the ALJ's weighing of the opinions from medical sources other than Drs. Brennan and Ho, we do not address these arguments because Hantzis did not raise them in the district court.  See Stewart v. Dep't of Health & Human Servs., 26 F.3d 115, 115 (11th Cir. 1994).

reasons" for not giving controlling weight to the treating physician's opinion). This Court has found "good cause" to exist where: (1) the opinion was not bolstered by the evidence; (2) the evidence supported a contrary finding; or (3) the opinion was conclusory or inconsistent with the doctor's own medical records. Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1179 (11th Cir. 2011). The ALJ must "clearly articulate the reasons for giving less weight" to a treating physician's opinion. See Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997).

However, an ALJ may reject any medical opinion if the evidence supports a contrary finding. Sryock v. Heckler, 764 F.2d 834, 835 (11th Cir. 1985). When the ALJ's articulated reasons for assigning limited weight to a treating physician's opinion are supported by substantial evidence, there is no reversible error. See Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005).

**B.    Hantzis's Claim**

Here, in his May 1995 treatment notes, Dr. Ho listed functional impairments of "[r]estricted bending, lifting and twisting," and stated that Hantzis "remains unable to work due to her chronic symptomatology." In August 1995, Dr. Brennan opined that Hantzis needed vocational rehabilitation and had the following work restrictions: (1) lifting no more than 20 pounds; (2) no frequent bending and twisting at the back; and (3) short rest periods of less than a minute to perform exercises when her symptoms significantly increase. In July 1997, Dr. Brennan

noted an additional "functional loss of being unable to tolerate prolonged sitting or standing activities."

In determining Hantzis's RFC, the ALJ declined to give controlling weight to the opinions of Drs. Ho and Brennan about Hantzis's functional limitations. Instead, the ALJ gave "significant weight" to Dr. Brennan's lifting restriction of 20 pounds, but "little weight" to the doctors' other restrictions on Hantzis's ability to sit, stand, bend, and twist.  By way of explanation, the ALJ stated:

> In determining the amount of weight to accord these opinions, the undersigned had considered various factors including, the examining relationship, the treating relationship, supportability, consistency, and specialization.  The undersigned notes that these opinions are not supported by the doctors' own internal notes whereby improvement is documented in the claimant's condition with continued conservative management.  The undersigned finds these limitations are inconsistent with the record when considered in its entirety.  Furthermore, the undersigned notes that the ultimate issue of disability is a finding of fact reserved to the Commissioner.

The ALJ concluded that his RFC assessment—the ability to perform a full range of light work—was "supported by the longitudinal treatment record and the effectiveness of [Hantzis's] conservative treatment, physical therapy, and medication regimen."

We conclude that the ALJ applied the correct legal standards when evaluating Drs. Brennan's and Ho's opinions, and that substantial evidence supports the ALJ's decision to grant little weight to Drs. Brennan's and Ho's opinions regarding Hantzis's ability to sit, stand, bend, and twist.  The ALJ

provided good cause for discounting these opinions when he explained that they were unsupported by the doctors' own internal notes and inconsistent with the entire record.  See Winschel, 631 F.3d at 1179.

Furthermore, substantial evidence supports the ALJ's conclusion that these opinions were not supported by Drs. Brennan's and Ho's notes or the rest of the record.  Medical records showed that Hantzis experienced improvement with medication and therapies, such as physical therapy and strengthening exercise. Though Hantzis's subjective report of her pain did not consistently or greatly improve, she showed gains in flexibility and strength.  For example, at examinations, Dr. Brennan generally noted only a mild to moderate amount of splinting and tenderness.  Also, in February 1995, Dr. Brennan noted Hantzis could flex forward to a position where her hands were approximately three feet from the floor, but the distance had decreased to two feet in March, April and June 1995, and to one foot in August 1995.  In April and June 1995, Dr. Brennan described Hantzis's L5 radiculopathy as "gradually resolving."  Many objective diagnostic tests results, such as x-rays, CT scans, electromyography, and nerve conduction studies were normal.  For these reasons, the ALJ provided good cause for according little weight to Drs. Brennan's and Ho's functional limitations in sitting, standing, bending, and twisting, and substantial evidence supports the ALJ's determination.

Hantzis suggests that the ALJ improperly discounted the opinions of Drs. Brennan and Ho based on the opinion of another treating physician, Dr. Jerrilyn Wetzel.  Hantzis stresses that Drs. Brennan and Ho treated her chronic back pain for years, while Dr. Wetzel saw her only three times.

In March and June 1997, Dr. Wetzel treated Hantzis for episodes of vertigo, facial numbness, chest pain, and shortness of breath.  In her June treatment notes, Dr. Wetzel noted, among other things, that (1) Hantzis kept trying to get Dr. Wetzel to relate all of her current symptoms back to a 1989 fall; (2) except for a passing reference to a steroid injection, Hantzis had not disclosed her fall or her history of chronic low back pain at her earlier visit in March 1997; and (3) Hantzis was difficult to follow when describing her history of complaints and contradicted herself while describing her symptoms.  Dr. Wetzel made clear to Hantzis that she thought Hantzis's current complaints of dizziness and loss of consciousness were unrelated to her 1989 back injury or her chronic low back pain.  Dr. Wetzel explained to Hantzis that her current symptoms might be related to heart disease and would need to be worked up separately, and Dr. Wertzel advised Hantzis to continue therapy for her chronic back pain with Drs. Brennan and Ho.  Dr. Wetzel expressed no opinion about Hantzis's ability to sit, stand, twist or bend.

Contrary to Hantzis's argument, the record does not reflect that the ALJ discounted Drs. Brennan's and Ho's opinions of Hantzis's functional limitations

8

based on Dr. Wetzel's statements in her treatment notes or based on any misunderstanding about whether Hantzis's chronic back and leg pain dated back to her 1989 falls. Indeed, the ALJ found that the medical evidence established that Hantzis sustained two falls in 1989 that were the genesis of her complaints of chronic back pain, leg pain, and headaches. In reviewing the medical evidence, the ALJ noted Dr. Wetzel's statements in her treatment notes, but the ALJ did not express that these statements carried more weight with him than other parts of the record documenting the effectiveness of Hantzis's physical therapy and medication regimens, which the ALJ discussed at length. Nor did the ALJ point to Dr. Wetzel's statements in explaining his decision to discount the opinions of Drs. Brennan and Ho.

In sum, substantial evidence supports the ALJ's articulated reasons for assigning little weight to the opinions of Drs. Brennan and Ho about Hantzis's sitting, standing, bending and twisting restrictions. For this reason, we affirm the ALJ's denial of Hantzis's application for DIB benefits.

**AFFIRMED.**