[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAY 31, 2006
THOMAS K. KAHN
CLERK

No. 05-15720
Non-Argument Calendar

_____

D. C. Docket No. 04-00383-CV-DF-5

FORREST MILLER,

Plaintiff-Appellant,

versus

JO ANNE B. BARNHART,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Georgia

_____

(May 31, 2006)

Before ANDERSON, BIRCH and HULL, Circuit Judges.

PER CURIAM:

Forrest Miller appeals the district court's order affirming the

Commissioner's denial of his application for disability insurance benefits, 42

U.S.C. § 405(g). After review, we vacate and remand.

## I. BACKGROUND

We first review Miller's medical history and then the Administrative Law

Judge's ("ALJ") decision.

### A.    Miller's Testimony

In his application for social security benefits, Miller alleged that, as of

September 13, 1998, he was disabled due to osteoarthritis and allied disorders in

his knee caused by an injury at work.

At the administrative hearing, Miller, who was forty-six years old, testified

at length as follows. Miller last worked as a prison guard and previously had

performed construction work for several electrical companies and attended trade

school. Miller's knee had been causing pain in his left hip and back for the past

month and a half that was so severe at times that he could not walk. He always had

pain in his knee, even when it was not bearing weight, and it almost always

swelled. Miller could stand only for about five minutes, could walk less than 100

feet, and was unsure as to how long he could sit without changing positions. He

believed he could not perform a sit-down job because he had to lie down whenever

his leg "gave out." That type of pain occurred at least once a week and lasted for

two to three days. Heating pads, ice packs and pain medicine relieved the pain, but sleep was difficult due to the pain in his knee, hip, and back.

As to his daily activities, Miller could lift a sack of groceries on some days and drive a car. His girlfriend usually took care of household chores and grocery shopping, but Miller sometimes prepared his own meals. Miller paid his own bills. His main problem was getting in and out of the bathtub, but he used a shower. He had problems getting dressed but could do it himself. He attended church once a month, but was unable to participate in most of his hobbies due to his knee pain. Miller occasionally used a cane to walk.

## B. Miller's Medical History

After Miller injured his knee by stepping in a hole at work, he saw Dr. James Price, an orthopedic specialist, in September 1998. Dr. Price diagnosed Miller with a ligament tear and performed arthroscopic surgery in October 1998. Dr. Price saw Miller more than twenty times between 1998 and August 2001. Dr. Price's notes indicated that Miller repeatedly expressed interest in a total knee replacement surgery, but Dr. Price informed him that this should be a last resort treatment due to his young age. Dr. Price only saw Miller once in 2002 and once in 2003. On August 18, 2003, Dr. Price opined that Miller was permanently disabled, that he could not lift more than ten pounds, and that he could stand or

walk for less than one hour in an eight-hour work day, but could sit without restriction. Dr. Price further opined that Miller could not squat, twist, or climb, and could only occasionally (one to three hours daily) bend or push and pull.

After his 1998 surgery, Miller was referred to physical therapy but was discharged in February 1999 after attending only five of twelve scheduled appointments and failing to reschedule his last cancelled appointment. During his physical therapy sessions, Miller tolerated the stationary bicycle, gym squats, heel raises, quad sets, hamstring curls, and straight leg raises. Miller complained of pain, but was getting a bit stronger with the exercises. A November 1998 report from the physical therapists indicated that Miller was a chronic smoker who had smoked three packs per day for the past twenty years.

On October 31, 2001, a state agency, non-examining physician assessed that Miller's ability to push and pull in his lower extremities was limited and that Miller could occasionally lift twenty pounds, frequently lift ten pounds, stand or walk and sit for about six hours of a workday. On February 11, 2002, Dr. Robert Willingham, Jr., a non-examining physician, assessed that Miller could occasionally lift twenty pounds, frequently lift ten pounds, stand or walk and sit for about six hours of a workday, and had no limitations in his ability to push and pull.

On January 27, 2003, Dr. Jeffrey Fried, an orthopedic surgeon, examined

4

Miller and was the examining, non-treating physician in the case. Dr. Fried opined that Miller could occasionally lift a maximum of fifty pounds and frequently lift a maximum of ten pounds, could stand or walk for three hours in an eight-hour workday, and could sit without impairment. Dr. Fried advised that Miller should avoid working on uneven terrain due to instability and that his pain medication could affect his alertness.

On June 24, 2003, Dr. James Tison, Miller's primary care physician, examined Miller and stated that Miller had a chronic unstable right knee and chronic pain, which precluded gainful employment. On August 15, 2003, Dr. Tison opined that Miller had significant functional limitations due to his right knee which required frequent medication for pain relief, and concluded that this would preclude him from employment that requires manual dexterity and alertness. Dr. Tison concluded that Miller would require knee replacement surgery in order to return to "functional capacity."

In summary, all the doctors essentially agreed that Miller could sit without restriction, but disagreed about the extent to which Miller could stand, walk, and lift. Both treating physicians, Dr. Price and Dr. Tison, determined that Miller was disabled. Specifically, Dr. Price opined that Miller could lift no more than ten pounds and could stand or walk less than one hour a day. The two non-examining

5

physicians concluded that Miller could lift twenty pounds occasionally and ten pounds frequently, and stand or walk six hours a day. The one examining, non-treating physician opined that Miller could lift a maximum of fifty pounds occasionally and ten pounds frequently, and could stand or walk three hours a day.

**C.    The ALJ's Decision**

We outline the five-step process the ALJ must follow in reviewing an application for social security disability benefits. An ALJ must evaluate Miller's claim with respect to these five criteria, set forth in 20 C.F.R. § 404.1520:

1.    Is Miller performing substantial gainful activity?

2.    Does Miller have a severe impairment?

3.    Does Miller have a severe impairment that meets or equals a listed impairment?

4.    Can Miller perform his past relevant work?

5.    Based on Miller's age, education, and work experience, can Miller perform other work of the sort found in the national economy?

In this case, the ALJ followed the five step process. As for the first step, the ALJ concluded that Miller had not engaged in substantial gainful activity since the onset date of his alleged disability.

As for the second step, the ALJ found that Miller suffered from post-traumatic arthritis in his right knee and that Miller needed a total knee replacement.

6

The ALJ determined that this was a "severe" impairment.[1]

As for the third step, the ALJ compared Miller's impairments to the listed impairments. Although the list is too voluminous to recite here, the purpose of the listings is to "streamline[] the decision process by identifying those claimants whose medical impairments are so severe that it is likely they would be found disabled regardless of their vocational background." Bowen v. Yuckert, 482 U.S. 137, 153, 107 S. Ct. 2287, 2297 (1987). The ALJ concluded that Miller's impairments did not meet or equal any of the listed impairments.

As for the fourth step, the ALJ found that Miller's residual functioning capacity ("RFC") was for "light work as he has no limitations in sitting, and can stand and walk three hours combined." The ALJ limited Miller to unskilled work due to the side effects of pain medication. A vocational expert ("VE") testified that based on an RFC for light work, Miller was unable to perform his past relevant work. In determining Miller's RFC, the ALJ found that Miller's "activities of daily living are not credible with his allegations of disability" and that "[h]is description of disabling pain and symptoms is not supported by his treating or

[1]The ALJ also found that Miller's allegation of alcohol abuse as a "severe" and disabling impairment was not substantiated by the evidence because his alcohol use on the weekends did not affect his capacity to work. Miller does not challenge this finding on appeal. Therefore, he has abandoned the issue. See Allstate Ins. Co. v. Swann, 27 F.3d 1539, 1542 (11th Cir. 1994) ("Issues that clearly are not designated in the initial brief ordinarily are considered abandoned.").

examining sources." Notably, although Dr. Price and Dr. Tison concluded that Miller was "permanently disabled" or precluded from gainful employment, the ALJ determined that "[n]o physician supports disability" and a light work RFC was supported by Dr. Fried's assessment as well as other medical assessments in the record. The ALJ described Miller's treatment history with Dr. Price, but did not state with any specificity the weight, if any, given to Dr. Price's or Dr. Tison's assessments. Thus, the ALJ failed to explain the weight he gave to the treating physicians' opinions and why he rejected their conclusions.

At step five, the ALJ asked the VE whether someone with Miller's light RFC and additional specific work restrictions was capable of making a vocational adjustment to other work. The VE opined that someone with Miller's RFC and restrictions could work under the light level as an electrical assembler or tagger, or under the sedentary, unskilled level as a lens inserter, telephone order clerk, or hand assembler. The ALJ then found that Miller was not disabled because there was work in the national economy that he could perform.

We note, however, that the ALJ also asked the VE whether someone with Miller's self-described limitations, a sedentary RFC and unable to sustain a combination of sitting, standing, and walking eight hours a day and forty hours a week on a continuing basis, could perform other work. The VE opined that

8

someone in that condition would be unable to sustain competitive employment.

The district court affirmed the ALJ's decision, and Miller timely appealed.

## II. DISCUSSION

On appeal, Miller argues that the ALJ (1) improperly evaluated the opinions of Drs. Price and Tison, and (2) improperly evaluated Miller's testimony. We discuss each issue in turn.[2]

### A.      Evaluation of Physicians' Opinions

As Miller points out, Dr. Price opined that Miller was "permanently disabled" and that Miller could not lift more than ten pounds, could stand or walk for less than one hour in an eight-hour work day, and could sit without restriction. Dr. Price further opined that Miller could not squat, twist, or climb, and could only occasionally bend or push and pull. Dr. Tison also opined that Miller's knee injury "precluded gainful employment" and his pain medication precluded him from employment that required manual dexterity and alertness. These treating physicians' testimony must be given substantial or considerable weight unless

---

[2]"Our review in a Social Security case is the same as that of the district court." Miles v. Chater, 84 F.3d 1397, 1400 (11th Cir. 1996). "We may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner]." Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983). Rather, we must defer to the Commissioner's decision if it is supported by substantial evidence. Id. "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Id. "If the Commissioner's decision is supported by substantial evidence we must affirm, even if the proof preponderates against it." Miles, 84 F.3d at 1400.

9

"good cause" is shown to the contrary. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1159 (11th Cir. 2004); see also 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).

"This Court has concluded 'good cause' exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." Phillips v. Barnhart, 357 F.3d 1232, 1240-41 (11th Cir. 2004). Social security regulations also provide guidelines for the ALJ to use when evaluating medical opinion evidence. See 20 C.F.R. § 404.1527. The ALJ considers many factors when weighing medical opinions, including the examining relationship, the treatment relationship, whether an opinion is amply supported, whether an opinion is consistent with the record, and a doctor's specialization. See id. § 404.1527(d). Generally, the opinions of examining physicians are given more weight than non-examining physicians and the opinions of treating physicians are given more weight than non-treating physicians. See id. § 404.1527(d)(1)-(2).

> Treating sources are given more weight because
>
> these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from

10

> reports of individual examinations, such as consultative examinations or brief hospitalizations.

Id. § 404.1527(d)(2). If a treating source's opinion on the nature and severity of an impairment is well-supported by objective evidence and is not inconsistent with the other substantial evidence in the record, the ALJ is to give it controlling weight. Id. If the ALJ does not give a treating physician's opinion controlling weight, "[t]he ALJ must clearly articulate the reasons for giving less weight to the opinion of a treating physician, and the failure to do so is reversible error." Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997); see also 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) (requiring the agency to "give good reasons" for not giving weight to a treating physician's opinion). However, when an incorrect application of the regulations results in harmless error because the correct application would not contradict the ALJ's ultimate findings, the ALJ's decision will stand. See Diorio v. Heckler, 721 F.2d 726, 728 (11th Cir. 1983).

While Dr. Price's and Dr. Tison's opinions regarding disability are not binding on the ALJ, see 20 C.F.R. § 404.1527(e)(1), the ALJ must clearly articulate the reasons for giving less weight to their opinions, and the ALJ did not adequately do so in this case. The record reveals that both Dr. Price and Dr. Tison were "treating physicians" under the regulations. The ALJ, however, did not

11

reference either physician's conclusion in his decision.[3]  The only reference to either doctor is the ALJ's recitation of the fact that Miller saw Dr. Price in September 1998 with complaints of knee pain.  Instead, the ALJ primarily relied on the evaluation of Dr. Fried, an examining but non-treating physician.  The ALJ also primarily used the evaluation by Dr. Fried in posing the hypothetical to the VE at the hearing.  Therefore, the ALJ committed error.  See Lewis, 125 F.3d at 1440.  Further, after careful review of the record, we are unable to say the error was harmless.

**B.    Miller's Testimony**

Miller also contends that the ALJ improperly discredited his own testimony regarding his pain and alleged disability.  In evaluating Miller's testimony, the ALJ relied on the non-treating physicians' assessments and did not address the treating physicians' opinions.  Therefore, we do not address Miller's testimony in light of our decision to remand this case to allow the ALJ to properly address the treating physicians' opinions.

### III. CONCLUSION

For the above stated reasons, the judgment of the district court is reversed and the case is remanded with instructions that it be returned to the Commissioner

---

[3]Despite the physicians' conclusions that Miller was disabled, the ALJ found that "[n]o physician supports disability[.]"

for further proceedings consistent with this opinion.

**REVERSED AND REMANDED.**