[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 21-13336

Non-Argument Calendar

_____

BRENDA J. BROWN,

Plaintiff-Appellant,

versus

SOCIAL SECURITY ADMINISTRATION, COMMISSIONER,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Alabama
D.C. Docket No. 7:19-cv-01138-RDP

_____

Before JORDAN, ROSENBAUM, and NEWSOM, Circuit Judges.

PER CURIAM:

Brenda Brown[1] appeals the district court's order affirming the decision of the Commissioner of the Social Security Administration ("Commissioner") to deny her application for disability benefits. Brown contends that the ALJ failed to offer good cause for rejecting the opinion of her treating physician and otherwise erred when assessing the medical-opinion evidence and her own testimony. After careful review, we reverse and remand for further proceedings.

## I.

Brown applied for disability benefits in January 2017, when she was 44 years old. She claimed that, as of December 02, 2016, she was unable to work because of a combination of mental and physical impairments, including rheumatoid arthritis, osteoarthritis, anxiety, depression, migraines, neuropathy, and endometriosis. After her applications were denied on initial review, she requested a hearing before an ALJ, which took place in July 2018.

The record before the ALJ at the time of the hearing included Brown's medical records and opinions from several medical professionals. As relevant here, Dr. Henry Townsend, Brown's

---

[1] Brown is also identified by the last name of "McKanney" in the administrative record. Consistent with the case caption, we use "Brown" in this opinion.

rheumatologist who had treated her for several years, opined in February 2018 that Brown would be unable to work due to pain caused by her arthritis and side effects of pain medication. Dr. Kathy Ronan, a consultative psychologist who examined Brown in April 2017, expressed views that Brown's pain would interfere with her ability to concentrate and that she would otherwise have severe difficulty handling work-related pressures because of anxiety and depression. Similarly, Dr. John Goff, a clinical neuropsychologist who evaluated Brown in September 2017, opined that Brown's pain, discomfort, and medications appeared to interfere with her ability to concentrate and to "perform[] even minimal role expectations," and that she exhibited a "ruminative preoccupation" with her physical functioning and a "variety of maladaptive behavior patterns aimed at controlling anxiety."

Other medical professionals expressed more optimistic views of Brown's ability to work. Drs. Amy Cooper and Krishna Reddy were state-agency physicians who rendered opinions in April 2017 that Brown was not disabled, based on a review of her medical records. Dr. Nathan Hewlett, who appears to be a radiologist, performed a consultative physical examination in March 2017 and expressed views consistent with Brown's ability to engage in productive work with certain limitations.

The ALJ also heard testimony from Brown and a vocational expert. Brown testified about her past work experiences and how her pain, fatigue, migraines, anxiety, and depression affected her ability to work and her day-to-day life. The vocational expert

answered several hypotheticals about what kinds of work an individual with Brown's background and different sets of physical limitations could complete.

After the hearing, the ALJ denied Brown's claim on the ground that, though she could not perform past relevant work, she could make a successful adjustment to other work that existed in substantial numbers in the national economy. In relevant part, the ALJ found that Brown had the "residual functional capacity to perform a range of light work" with certain restrictions to account for her impairments.

In analyzing Brown's RFC, the ALJ gave varying weights to the medical opinions in the record. With regard to Brown's physical impairments, the ALJ gave Dr. Townsend's opinion "little weight" because it was not supported by the "objective evidence and the treatment records," citing in particular mild or moderate findings in his treatment records from August and December 2017. The ALJ gave "great" weight to Dr. Hewlett's assessment because it was "consistent with the treatment history." She also gave "great weight" to Dr. Reddy's opinion, stating that it was "mostly consistent with the longitudinal history of the medical records and the bulk of the limitations" in the assessed RFC.

As for Brown's mental impairments, the ALJ gave Dr. Ronan's opinion "little weight" because it was "not supported by the longitudinal history of the treatment records," citing Dr. Townsend's treatment records from December 2017 which "showed no significant joint pain." She gave Dr. Goff's opinion "partial

weight," stating that it was "relatively consistent with the treatment history but [was] only a snapshot of one appointment." And she gave Dr. Cooper's opinion "great weight" because it "appears consistent with the medical records."

Based on this analysis, the ALJ found that Brown was not disabled from December 2, 2016, through October 30, 2018, the date of the decision, and so was not entitled to disability benefits. The Appeals Council denied Brown's request for review, making the ALJ's decision the final agency decision. *See Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). Brown then filed a complaint seeking judicial review from the district court, which affirmed the ALJ's decision. This appeal followed.

## II.

In Social Security appeals, we review whether the Commissioner's decision is supported by substantial evidence and based on proper legal standards. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* (quotation marks omitted). Our deferential review precludes us from deciding the facts anew, making credibility determinations, or reweighing the evidence. *Id.* As a result, we must affirm the agency's findings, including credibility determinations, if they are supported by substantial evidence, even if the evidence preponderates against them. *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir.2014). Nevertheless, "[w]e retain an important duty to

scrutinize the record as a whole and determine whether the agency's decision was reasonable." *Simon v. Comm'r, Soc. Sec. Admin.*, 7 F.4th 1094, 1104 (11th Cir. 2021).

## III.

Under the Social Security Act, a person is "disabled" if she is unable "to engage in any substantial gainful activity" due to any "medically determinable physical or mental impairment" of certain duration. 42 U.S.C. § 423(d)(1)(A).

The Social Security Administration uses a five-step process to decide whether a claimant is disabled and therefore entitled to disability benefits. *Simon*, 7 F.4th at 1104. The fifth step involves a determination of "whether the claimant can—despite any physical or mental impairments—obtain and perform any type of work that exists in substantial numbers in the national economy." *Id.* That determination is based in part on medical opinions or statements from physicians. *Winschel*, 631 F.3d at 1178-79.

In evaluating medical opinion evidence, "the ALJ must give special attention to the opinions of a claimant's treating physician." *Simon*, 7 F.4th at 1104. Under regulations in force at the time Brown filed her application, the ALJ was required "to give 'controlling weight' to a treating physician's opinions if they were 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and 'not inconsistent with the other substantial evidence in [the] case record.'" *Id.* (quoting 20 C.F.R.

§ 404.1527(c)(2)).[2]  Likewise, our caselaw required the agency to give a treating physician's opinions "substantial or considerable weight unless there [wa]s good cause to discount them." *Id.*  Good cause exists where the treating physician's opinion is conclusory or inconsistent with the doctor's own medical records, or where the evidence supports a contrary finding. *Id.*

If the ALJ rejects the opinion of a treating physician, she must clearly articulate her grounds for doing so. *Id.*  And "[i]f the ALJ fails to state reasonable grounds for discounting such evidence, we will not affirm simply because some rationale might have supported the ALJ's conclusion." *Id.* (quotation marks omitted).  "It is the responsibility of the agency, not the reviewing court, to supply the justification for its decision and to sufficiently explain the weight [it] has given to obviously probative exhibits." *Id.* at 1104–05 (quotation marks omitted).  Where the ALJ fails to state good cause to discount the opinions of a treating physician, we will reverse and remand. *See Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th

---

[2] The regulation quoted above applies to only those disability claims that were filed before March 27, 2017.  Claims filed after that date are governed by a new regulation prescribing a somewhat different framework.  *See* 20 C.F.R. § 404.1520c (stating that the new rules apply to "claims filed . . . on or after March 27, 2017).  We recently held that the new rules abrogating the treating-physician rule also supplant our caselaw with respect to treating physicians. *See Harner v. Soc. Sec. Admin., Comm'r*, __ F.4th __, 2022 WL 2298528, *4 (11th Cir. June 27, 2022).  Nevertheless, because Brown filed her claim before March 27, 2017, we apply the old rules under 20 C.F.R. § 404.1527 and our corresponding caselaw.

Cir. 1997) ("The ALJ must clearly articulate the reasons for giving less weight to the opinion of a treating physician, and the failure to do so is reversible error.").

Brown's main argument on appeal is that the ALJ failed to offer good cause to reject the opinions of her treating rheumatologist, Dr. Townsend. After careful review, we agree, and "that error alone is enough to require that we remand." *Simon*, 7 F.4th at 1105.

### A. Dr. Townsend

Dr. Townsend, who had treated Brown since 2015, completed a Clinical Assessment of Pain in February 2018. On this form, Dr. Townsend checked boxes to indicate the following opinions: (a) Brown's pain was present to such an extent as to be distracting to adequate performance of daily activities; (b) physical activity would increase pain to such an extent that bed rest or medication (or both) would be necessary; (c) side effects from her medications might limit the effectiveness of work duties; (d) as a result of pain and medication side effects, Brown would be totally restricted and unable to function at a productive level at work; (e) little improvement was expected and pain was likely to worsen with time; and (f) pain treatments either had no appreciable effect or only temporarily altered the level of pain she experienced. Although Dr. Townsend did not explain the grounds for these opinions on the form, "treating-physician opinions should not be considered in a vacuum, and instead, the doctors' earlier reports should be considered as the bases for their statements." *Schink v. Comm'r*

*of Soc. Sec.*, 935 F.3d 1245, 1262 (11th Cir. 2019) (quotation marks omitted).  We therefore look to Dr. Townsend's treatment records when evaluating the reasons offered by the ALJ for discounting his opinion.

In giving Dr. Townsend's opinion "little weight," the ALJ relied on some instances of mild or normal findings in Dr. Townsend's treatment history.  For example, Dr. Townsend examined Brown in August 2017 and observed no obvious soft tissue swelling of the hands or wrists, good handgrip strength, and 5/5 strength in her upper and lower extremities.  Dr. Townsend also observed Brown was "in no distress" and that she had a normal gait and stance.  Then, in December 2017, Dr. Townsend documented that Brown's "RA has been doing well since last visit with no significant joint pain, stiffness, or swelling from RA," and that she was "in no distress" and had a normal gait.  In the ALJ's view, this "objective evidence" did not support Dr. Townsend's ultimate opinions.

But the ALJ's decision largely fails to address Brown's knee joint pain or to explain why it did not support Dr. Townsend's opinions.  To begin with, imaging results from 2015 in Dr. Townsend's records provide clear, objective medical grounds for that pain.  X-rays showed moderate to severe joint space narrowing in both knees, which was mildly more prominent in the left knee.  And an MRI of Brown's left knee indicated an array of problems, including "synovial thickening . . . throughout the knee joint," "essentially complete loss of articular cartilage medially with prominent hypertrophic changes," "advanced changes of lateral joint

space," "extensive tearing of the meniscus," and "no obvious intact anterior cruciate ligament."

In addition, Dr. Townsend's treatment records document complaints of increasing knee pain beginning in January 2017, despite Brown's receipt of regular Remicade infusions and her taking of a variety of pain and anti-inflammatory medications, including opioids.[3]  She complained of left knee pain and crepitus in January 2017, worsening left knee pain in March 2017, increasing left knee pain in May 2017, increasing left knee pain in June 2017, which she rated as moderate to severe, increasing left knee pain in August 2017, again rated as moderate to severe, and increasing pain in her knees in December 2017, despite reporting no other "significant joint pain, stiffness, or swelling from [rheumatoid arthritis]."

Although Dr. Townsend regularly noted that Brown was in "no distress" and had a normal gait and no soft tissue swelling of the knees, he found her condition severe enough to refer her to Dr. Wayne McGough for assessment of knee replacement surgery in June 2017, and his evaluation in December 2017 found moderate crepitus and tenderness of the "lower extremity."  Dr. McGough examined Brown in September 2017 and found "obvious crepitation" and pain on range of motion.  He diagnosed "left knee end-

---

[3] Among other medications, Brown was prescribed Remicade, an immunosuppressive drug used to treat arthritis; Mobic, a nonsteroidal anti-inflammatory drug; Plaquenil, an immunosuppressive drug; Tylenol-Codeine #3, an opioid pain reliever; Norco, an opioid pain reliever; and Prednisone, a corticosteroid.

stage varus primary osteoarthritis" and stated that the "most definitive long-term treatment will be a total knee arthroplasty." Due to her "relatively young age," though, they agreed to try nonoperative treatments first, such as a knee brace and a "Synvisc injection" to supplement the fluid in her knee to help lubricate and cushion the joint. This evaluation was faxed to Dr. Townsend.

"Before an ALJ may reject a treating physician's opinions as inconsistent with other medical findings in the record, he or she must identify a 'genuine' inconsistency." *Simon*, 7 F.4th at 1107. "It is not enough merely to point to positive or neutral observations that create, at most, a trivial and indirect tension with the treating physician's opinion by proving no more than that the claimant's impairments are not all-encompassing." *Schink*, 935 F.3d at 1263.

Without some additional explanation, we fail to see any "genuine" inconsistency between Dr. Townsend's opinions and his treatment records regarding Brown's arthritis and knee pain. *See Simon*, 7 F.4th at 1107. The treatment records indicate that Brown suffers from end-stage varus primary osteoarthritis, with accompanying "advanced" or "extensive" changes to her knee as documented in imaging studies, that her pain had been increasing since early 2017 despite taking an abundance of medications, including opioid-based pain relievers, and that her condition was severe enough to warrant a total knee replacement. Contrary to the ALJ's suggestion, these records tend to support Dr. Townsend's opinions that Brown's pain would increase through exertion in a work

environment, that her productivity during a normal workday would be compromised by her pain and side effects from her various medications, and that her condition was not likely to improve through nonoperative treatments.[4]

For these reasons, we conclude that the ALJ failed to articulate good cause for discounting the opinion of Dr. Townsend.

## B. Drs. Ronan and Goff

Our conclusion that the ALJ's rejection of Dr. Townsend's opinion was not supported by good cause also casts doubt on the ALJ's assessment of the opinions from Dr. Ronan and Dr. Goff. Both doctors offered views, among others, that Brown's work performance would be severely affected in part by maladaptive responses to her pain stemming from anxiety and depression. Dr. Ronan reported that Brown was "especially susceptible to stress" and had "coping limitations," she "appear[ed] to be a worrier and ruminator," her "[a]ttention and concentration were a little

---

[4] We note that Dr. Hewlett reported that Brown, during a one-time consultative examination in March 2017, entered the room without difficulty, sat comfortably during the examination, and removed and replaced her shoes independently. But those findings say little on their own about her ability to perform work tasks on a full-time basis. *See Simon*, 7 F.4th at 1107 (explaining that the ALJ must account for "the more stressful environment of a workplace"). Plus, as the ALJ recognized, Brown experienced "varying degrees of swelling and joint pain." And one month later, in April 2017, Dr. Ronan observed Brown wincing and shifting as if in pain during her consultative examination. Dr. Goff observed Brown in similar discomfort during his examination in September 2017.

variable due to pain and worries," and she "would have severe troubles with managing work related pressures." Echoing these observations, Dr. Goff opined that Brown's pain and discomfort appeared to interfere with her ability to concentrate and to "perform[] even minimal role expectations," and that she exhibited a "ruminative preoccupation" with her physical functioning and a "variety of maladaptive behavior patterns aimed at controlling anxiety."

In giving Dr. Ronan's opinion on that issue "little weight," the ALJ found that it was "not support[ed] by the longitudinal history of the treatment records." But it's not clear what the ALJ meant by that, apart from the ALJ's statement that, "[i]n December 2017, the treatment records showed no significant joint pain." As we just explained about Dr. Townsend's records, though, the records documented significant knee joint problems and pain, including in December 2017. And Dr. Ronan's opinions about Brown's ability to cope with pain and stress in the workplace because of anxiety and depression were broadly consistent with the views of Dr. Townsend and Dr. Goff.

The Commissioner cites other normal findings during Brown's mental-status examinations, including normal mood, affect, insight, and judgment. But none of those findings are inconsistent with Dr. Ronan's opinion on Brown's ability to cope with pain and stress in the workplace. *See, e.g.*, *Simon*, 7 F.4th at 1109 ("[S]uch capabilities—*e.g.*, a good fund of information, fair insight, good judgment, good calculation abilities, and good abstract

reasoning—say little to nothing about the capacity to work of a person suffering from the types of mental illnesses with which Simon was diagnosed."). Nor did the ALJ clearly articulate those grounds in her decision. *See Schink*, 935 F.3d at 1263.

As for Dr. Goff, the ALJ found that his opinion was "relatively consistent with the treatment history" but entitled to only "partial weight" because it was "only a snapshot of one appointment." Yet that rationale would also seem to undermine the opinions from the state-agency physicians, who did not examine Brown, but the ALJ gave their opinions "great weight." *See Schink*, 935 F.3d at 1261 (explaining that ALJs generally must apply their rationales for rejecting opinion evidence "across the board" or explain why a difference in treatment is warranted). Dr. Goff, in contrast, based his opinions on in-person observations and psychometric testing. To be sure, the ALJ did state that the views of the state-agency physicians were "consistent with" the "medical records," but we can't tell what medical records the ALJ was referring to because she did not explain these conclusory statements. *See Winschel*, 631 F.3d at 1179 ("[T]he ALJ must state with particularity the weight given to different medical opinions and the reasons therefor.").

The ALJ also noted that Dr. Goff "had several concerns about the claimant's medications and the effect on her testing." But it's difficult to tell what significance the ALJ attributed to that fact. After all, the side effects of her medications and their effect on her ability to perform evaluative testing would seem to bear on her

ability to perform work-related tasks. And Dr. Goff expressly concluded that Brown was "taking a number of medications that have a negative impact on cognition including attention and concentration." Dr. Goff's observations were also broadly consistent with Dr. Townsend's opinion that Brown's pain and medication side effects would make her unable to function at a productive level. Moreover, that Dr. Goff sought clarification about her physical condition to determine whether it had a direct effect on her cognition, as the ALJ noted, does not seem to undermine any of the opinions he did offer. *See Schink*, 935 F.3d at 1262 ("[A] medical opinion's failure to address all possible functional limitations is not a logical reason to discount what it says about the limitations that it does address.").

### C. Other Arguments

Brown also challenges the ALJ's assessment of both the opinions of the state-agency physicians, Drs. Cooper and Reddy, and her own testimony at the hearing. We decline to address these arguments or any accompanying preservation issues because we conclude that remand is warranted for the reasons explained above.

## IV.

For the foregoing reasons, we hold that the denial of Brown's application for disability benefits was not supported by substantial evidence. Accordingly, we reverse the judgment of the

16                    Opinion of the Court                    21-13336

district court with instructions to remand to the agency for further proceedings consistent with this opinion.

**REVERSED AND REMANDED.**