[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 22-11010

Non-Argument Calendar

_____

PATRICIA DEERMAN,

Plaintiff-Appellant,

*versus*

SOCIAL SECURITY ADMINISTRATION,
COMMISSIONER,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Alabama
D.C. Docket No. 4:20-cv-00943-NAD

_____

Before LUCK, LAGOA, and BRASHER, Circuit Judges.

PER CURIAM:

Patricia Deerman appeals a magistrate judge's order affirming the Social Security Administration Commissioner's denial of her claim for supplemental security income and child disability insurance benefits. We affirm.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Deerman applied for supplemental security income in October 2017 and for disability insurance benefits in November 2017, alleging that she'd become disabled in December 2015. In her disability report, Deerman listed comprehension problems, no strength in her arms, anxiety, and depression. At her hearing before an administrative law judge in September 2019, Deerman presented opinions and findings by numerous medical professionals, including Dr. June Nichols, a psychologist who'd evaluated Deerman in August 2019. The administrative law judge also heard testimony from Deerman, Deerman's mother, and a vocational expert.

Some of the evidence was consistent with a finding of disability, much of it wasn't, and some of it conflicted. For example, although she was placed in a special education program owing to her autism, Deerman's educational records indicated decent performance in school. She received passing grades in her math classes, scored at the college readiness benchmark in standardized

English testing, and graduated from high school. Various psychiatric and psychological evaluations revealed "no significant abnormalities" and found that she was alert, was oriented to all spheres, had appropriate mood and affect, had adequate attention and concentration, was friendly and cooperative, was able to accept supervision, was capable of sustaining simple work tasks, and could effectively communicate with coworkers and supervisors. But she was also reported as being helpless, being inclined to drama, having limited insight and judgment, and having an irritable mood.

Dr. Nichols's evaluation was particularly pessimistic. In contrast to most other examinations, which Deerman attended alone, Deerman's mother accompanied her and provided numerous answers to Dr. Nichols's questions on behalf of her daughter. Dr. Nichols observed that Deerman was a neat and clean individual with clear speech and regular orientation and that she had poor eye contact, an anxious mood, and a tearful affect. Although Dr. Nichols stated that Deerman had "impoverished" thought processes, she noted that there was no evidence of confusion. Dr. Nichols opined that Deerman required supervision; was unable to maintain attention, concentration, and pace for two-hour periods; was unable to maintain a regular schedule; would miss more than one or two days of work per month; was unable to sustain an ordinary work routine without special supervision; was unable to accept instructions or appropriate supervision; was unable to maintain socially appropriate behavior; and couldn't interact in social situations in the workplace. Dr. Nichols also submitted a statement opining that Deerman wasn't capable of meeting most

requirements of work, except that she could understand, remember, and carry out very short and simple instructions; she would be off task twenty to thirty percent of the day; and she would miss at least fifteen days in a thirty-day period.

In October 2019, the administrative law judge issued a decision. He applied the five-factor sequential analysis under 20 C.F.R. section 404.1520(a) to determine whether Deerman was disabled. At step one, the administrative law judge found that Deerman hadn't engaged in substantial gainful activity since her alleged onset date. At step two, he found that Deerman had four severe impairments: autism; personality/impulse control disorders; depressive/bipolar disorders; and anxiety/obsessive disorders. Turning to step three, he found that Deerman didn't have an impairment or combination of impairments that met or equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.

Before proceeding to step four, the administrative law judge found that Deerman had the residual functional capacity to perform the following work:

> [Deerman] can perform the full range of unskilled work which is simple, repetitive, and routine. Her supervision must be simple, tactful, supportive, and non-confrontational. Interpersonal contact with supervisors and coworkers should be superficial. She must not be required to work at fast-paced production line speeds. She should have only occasional, gradually[ ]introduced workplace changes. She must

have normal, regular work breaks at least every two
to three hours.

The administrative law judge fully discussed all the evidence and concluded that Dr. Nichols's contrary opinion about Deerman's residual functional capacity was neither supported by nor consistent with other evidence in the record. Specifically, he found that: (1) Dr. Nichols had allowed Deerman's mother to participate heavily in the interview process and apparently had relied heavily on her statements regarding Deerman's medical and educational history without supportive evidence, such as various medical records; (2) Dr. Nichols didn't articulate why Deerman would miss one or two days of work per month or fifteen days of work out of thirty and gave conflicting opinions on that finding; (3) Dr. Nichols's opinions conflicted with examination findings in the record and professional observations of Deerman's appearance and affect; (4) Dr. Nichols's opinions regarding Deerman's communication limitations relating to autism spectrum disorder conflicted with those of another psychologist who found that Deerman was capable of communicating effectively with coworkers and supervisors; and (5) Dr. Nichols's opinions regarding Deerman's cognitive abilities weren't consistent with Deerman's educational records.

At step four, the administrative law judge found that Deerman couldn't perform her past relevant work as a fast-food fountain server. Finally, at step five, after considering Deerman's age, education, work experience, and residual functional capacity, in conjunction with the Medical–Vocational Guidelines and the

testimony of the vocational expert, he found that Deerman could perform work that existed in significant numbers in the national economy, such as cleaner and floor waxer. Ultimately, he found that Deerman wasn't disabled from her alleged onset date through the date of the decision.

Deerman filed a complaint in the district court requesting review of the Commissioner's final decision, and both parties provided consent for a magistrate judge to conduct a trial and enter final judgment. Deerman's brief in support of disability argued that: (1) the administrative law judge failed to assess the weight of Deerman's mother's testimony; (2) the administrative law judge failed to accord proper weight to Dr. Nichols and disregarded her opinions because she relied on Deerman's mother's answers to questions; (3) Deerman met two listings for impairment under the Social Security regulations; and (4) the administrative law judge's decision wasn't based on substantial evidence.

The magistrate judge issued a final order affirming the decision because substantial evidence supported the finding that Dr. Nichols's opinions were unpersuasive. Specifically, the magistrate judge found that: (1) it's the job of the administrative law judge to resolve conflicting medical evidence; (2) the administrative law judge reached his finding as to Deerman's residual functional capacity by exhaustively reviewing and considering all evidence, including Dr. Nichols's opinions; and (3) the administrative law judge properly applied the new Social Security regulations to consider the supportability and consistency factors and explained the

reasons for finding that Dr. Nichols's opinions were neither supported by nor consistent with evidence in the record.

Deerman timely appealed.

## STANDARD OF REVIEW

We review a social security disability case to determine whether the Commissioner's decision is supported by substantial evidence and review de novo whether the correct legal standards were applied. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). Substantial evidence is any relevant evidence greater than a scintilla that a reasonable person would accept as adequate to support a conclusion. *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). If it's supported by substantial evidence, we must affirm the administrative law judge's decision, even if the evidence may preponderate against it. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158–59 (11th Cir. 2004). We can't decide the facts anew, make credibility determinations, or reweigh the evidence. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011).

## DISCUSSION

Deerman argues that the administrative law judge erred in: (1) discrediting Dr. Nichols's medical opinions because his finding that they were unpersuasive wasn't supported by substantial evidence; and (2) substituting his own opinion for that of a medical source.

In assessing disability, the administrative law judge applies a five-step sequential analysis to determine whether the claimant:

(1) is engaged in substantial gainful activity; (2) has a severe medically determinable impairment or combination of impairments; (3) has an impairment that meets or equals a listed impairment and meets the duration requirements; (4) can perform past relevant work, in light of her residual functional capacity; and (5) can make an adjustment to other work, in light of her residual functional capacity, age, education, and work experience. 20 C.F.R. § 404.1520(a)(i)–(v); *Winschel*, 631 F.3d at 1178. Under this framework, the administrative law judge considers medical opinions from acceptable medical sources, including licensed physicians and psychologists. 20 C.F.R. §§ 404.1502(a), 404.1513(a)(2).

Social Security regulations require administrative law judges to focus on the persuasiveness of a medical opinion in light of five factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) "other factors that tend to support or contradict" the opinion. *Id*. § 404.1520c(c)(1)–(5); *Harner v. Soc. Sec. Admin., Comm'r*, 38 F.4th 892, 897–98 (11th Cir. 2022). Supportability and consistency are the most important factors and must be explained, but the administrative law judge isn't required to explain the other factors. 20 C.F.R. § 404.1520c(b)(2).

We agree with the magistrate judge that substantial evidence supported the administrative law judge's finding that Dr. Nichols's opinions were unpersuasive. As to supportability, the administrative law judge determined that Dr. Nichols's opinions weren't supported by evidence and noted that Dr. Nichols relied heavily on the statements of Deerman's mother regarding

Deerman's medical and educational history.     20 C.F.R.
§ 404.1520c(c)(1); *Harner*, 38 F.4th at 897–98.   Specifically, he
pointed to other examination reports and testimony that differed
from Dr. Nichols's findings and determined that they were more
credible.   He also observed that Dr. Nichols failed to explain her
(self-contradictory) assessment that Deerman would necessarily
miss one or two days of work per month or fifteen days of work
out of thirty.

As to consistency, the administrative law judge noted that
Dr. Nichols's opinions conflicted with ample evidence in the rec-
ord.  20 C.F.R. § 404.1520c(c)(2); *Harner*, 38 F.4th at 897–98.  This
evidence included that:

- Examination findings showed Deerman to be alert, fully
  oriented, cooperative, and in no acute distress and that
  she had intact memory, normal speech and thought con-
  tent, coherent thought process, appropriate fund of
  knowledge, and no signs of anxiety or depression;

- Deerman demonstrated no significant psychological
  symptoms during a weeklong inpatient hospitalization in
  2013, in contrast to Dr. Nichols's opinion that Deerman
  would be unable to maintain a socially appropriate ap-
  pearance or adhere to basic standards of neatness or
  cleanliness;

- Deerman presented as clean with an appropriate appear-
  ance at her exams, including one in October 2014 where
  the examiner observed that Deerman was clean, neatly

dressed, friendly, and cooperative and that she didn't appear to have problems with supervision, and that even Dr. Nichols observed that Deerman presented as neat and clean at her exam;

- Dr. Nichols's opinions regarding Deerman's communication limitations conflicted with another psychologist's January 2018 opinion finding that Deerman was capable of communicating effectively with coworkers and supervisors; and

- Dr. Nichols's opinions weren't consistent with Deerman's educational records showing that she graduated from high school with an average GPA.

Because there's substantial evidence to support the administrative law judge's conclusions that Dr. Nichols's opinions were unpersuasive, we can't conclude that he erred in discrediting them. *Crawford*, 363 F.3d at 1158–59.

Deerman's second argument—that the administrative law judge improperly substituted his own judgment for that of Dr. Nichols—also fails. The administrative law judge reached his residual functional capacity determination by completing an exhaustive review of all evidence that Deerman presented and by considering all medical evidence in the record, including Dr. Nichols's opinion evidence. Accordingly, we affirm.

**AFFIRMED.**